**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 07a0676n.06
Filed: September 17, 2007

**No. 06-2009**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | ON APPEAL FROM THE |
| Plaintiff-Appellee, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE WESTERN |
| v. | ) | DISTRICT OF MICHIGAN |
| | ) | |
| MICHAEL JOSIAH WINTERS, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| _____ | ) | |

BEFORE: COLE and GRIFFIN, Circuit Judges; and WATSON, District Judge.[*]

GRIFFIN, Circuit Judge.

Defendant Michael Josiah Winters appeals his 264 month sentence, contending that the district court erred in failing to subtract two levels from his offense level for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1(a). Because the district court did not commit clear error in denying Winters a reduction for acceptance of responsibility, we affirm Winters' sentence.

I.

On March 30, 2005, at approximately 9 a.m., Winters entered the Chemical Shore Line Bank in Sister Lakes, Michigan. Upon entering, Winters approached a teller, Christine Mead, but found that she was on the phone with a customer. Winters then retreated to a table in the lobby, wrote out

_____

[*]The Honorable Michael H. Watson, United States District Judge for the Southern District of Ohio, sitting by designation.

a demand note, and again approached the teller to tender the note. As Mead was still on the phone with a customer, Winters paced back and forth in front of her window. He then drew from his waistband a non-functioning black BB gun, which resembled a .45 caliber pistol. Winters pointed the weapon at the teller and told her to hang up the phone. Winters then ordered the teller and a trainee to lie on the floor and demanded that they not look at him or move. He jumped over the half door that separated the customer area from the employee area and took an ATM bag from the counter that contained approximately $6,000.

Winters then approached the vault and confronted the branch manager, Barb Fisher, and Sue Hebner, another employee. He pointed his weapon at Hebner and ordered Fisher to lie on the floor and not to look at him. Winters ordered Hebner to provide him with a bag. He then demanded a second, larger bag, and directed Hebner to open it. Because Hebner's hands were shaking uncontrollably, she was unable to open the bag as directed, and Winters grabbed the bag out of her hands. He proceeded to fill the bag with money from the vault, taking approximately $47,000. Winters then left, taking a total amount of $53,270 from the bank.

Defendant was arrested on May 25, 2005, in Harvey, Illinois, and charged with armed bank robbery, in violation of 18 U.S.C. § 2113(a) and (d). On January 23, 2006, Winters entered a plea of guilty in front of a United States Magistrate Judge pursuant to a plea agreement. During preparation of the Presentence Investigation Report ("PSR"), the investigator determined that Winters had pointed the weapon at the bank employees and had acted in a manner that qualified as "otherwise using" a dangerous weapon as provided in U.S.S.G. § 2B3.1(b)(2)(D) and recommended

a four-level upward adjustment to Winters' offense calculation. Winters disputed these findings, instead claiming that he had always kept the weapon pointed towards the floor and that he had made no verbal threats. According to Winters, this conduct merely constituted brandishing, rather than "otherwise using" a weapon. Based on these denials, the investigating officer concluded that Winters was not truthful in his representations and recommended that he be denied a two-level "acceptance of responsibility" reduction to his offense calculation.

The district court conducted an evidentiary hearing, receiving testimony from two of the bank's employees. The employees testified that Winters had pointed the weapon at them and made loud demands, directly contravening Winters' version of the robbery. The district court concluded that Winters had mischaracterized the events of the robbery in an attempt to minimize his conduct and subsequently denied Winters a two-level "acceptance of responsibility" reduction. In addition, the district court determined that Winters qualified as a career offender pursuant to U.S.S.G. § 4B1.1, resulting in an offense level of 34 and a criminal history category of VI. U.S.S.G. § 4B1.1(b). The recommended Guideline custody range for such an offender is 262 to 300 months.[1] Winters was sentenced to 264 months. He now timely appeals.

II.

Winters argues that the district court erred in refusing to grant him a two-point reduction in

---

[1]An offense level of 34 and criminal history score of VI would typically yield a sentencing range of 262 to 327 months. As the Guideline maximum may not exceed the statutory maximum, the upper end of the range is reduced to 300 months. U.S.S.G. § 5G1.1(c)(1) (2006); 18 U.S.C. § 2113(d) (indicating 25 year maximum sentence).

sentence based on acceptance of responsibility. First, Winters contends that, because he is a career

offender, his offense level is determined solely by the provisions of U.S.S.G. § 4B1.1(b), and that

any of his statements regarding his conduct during the robbery cannot constitute a denial of either

an element of the offense or of relevant conduct. He therefore opines that Application Note 1 of

U.S.S.G. § 4B1.1(b) explicitly precludes denial of his reduction in sentence. Second, Winters argues

that the court erred in its factual findings regarding his conduct and asserts that he merely

brandished, rather than "otherwise used," his weapon during the course of the robbery. Although

he admits that this determination is irrelevant to the actual calculation of his offense level, he

contends that this issue affected the district court's decision regarding his acceptance of

responsibility.

The United States Sentencing Guidelines provide for a two-level reduction to a defendant's

offense level, provided that the defendant "clearly demonstrates acceptance of responsibility for his

offense." U.S.S.G. § 3E1.1(a). The Application Notes state:

> 1.      In determining whether a defendant qualifies under subsection (a), appropriate considerations include, but are not limited to, the following:
>
> > (a) truthfully admitting the conduct comprising the offense(s) of conviction, and truthfully admitting or not falsely denying any additional relevant conduct for which the defendant is accountable . . . . Note that a defendant is not required to volunteer, or affirmatively admit, relevant conduct beyond the offense of conviction in order to obtain a reduction under subsection (a). A defendant may remain silent in respect to relevant conduct beyond the offense of conviction without affecting his ability to obtain a reduction under this subsection. However, a defendant who falsely denies, or frivolously contests, relevant conduct that the court determines to be true has acted in a manner inconsistent with

> acceptance of responsibility.

> * * *

> 3. Entry of a plea of guilty prior to the commencement of trial combined with truthfully admitting the conduct comprising the offense of conviction, and truthfully admitting or not falsely denying any additional relevant conduct for which he is accountable . . . will constitute significant evidence of acceptance of responsibility for purposes of subsection (a). However, this evidence may be outweighed by conduct of the defendant that is inconsistent with such acceptance of responsibility. A defendant who enters a guilty plea is not entitled to an adjustment under this section as a matter of right.

U.S.S.G. § 3E1.1, cmt. n.1 and n.3.

Defendant bears the burden of proving by a preponderance of the evidence that a sentence reduction for acceptance of responsibility is warranted. *United States v. Banks*, 252 F.3d 801, 806 (6th Cir. 2001) (citing *United States v. Benjamin*, 138 F.3d 1069, 1075 (6th Cir. 1998)). The district court's factual determinations regarding Winters' acceptance of responsibility will only be disturbed if the court's findings were clearly erroneous. *United States v. Bolden*, 479 F.3d 455, 464 (6th Cir. 2007) (citing *United States v. Brown*, 367 F.3d 549, 556 (6th Cir. 2004)); *see also* U.S.S.G. § 3E1.1, cmt. n.5 ("The sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility. For this reason, the determination of the sentencing judge is entitled to great deference on review."). "Questions of law, however, such as the appropriate application of a guideline to a particular set of facts, are subject to de novo review." *Banks*, 252 F.3d at 806 (citing *United States v. Morrison*, 983 F.2d 730, 732 (6th Cir. 1993)).

Based on Winters' testimony during his change of plea hearing and his statements during his interview with Pretrial Services, the investigating officer believed that Winters denied relevant

conduct pertaining to his behavior during the robbery. On that basis, the officer recommended against granting a two-point reduction under U.S.S.G. § 3E1.1(a) for acceptance of responsibility. Winters objected to this recommendation, stating that he always pointed his weapon towards the floor and denied making threats to bank employees. Winters' denials prompted the district court to hold an evidentiary hearing as to Winters' conduct during the robbery.

The district court received testimony from Christine Mead, the teller that Winters initially approached during the robbery. She testified that Winters pointed his weapon at her face and loudly ordered her to hang up the phone. Winters then instructed her, along with another teller, to lie on the floor. Mead testified that she feared for her safety. Winters confronted another bank employee, Sue Hebner, at the bank's vault. She testified that Winters pointed his weapon at her face and ordered her not to look at him. He further ordered Hebner to provide him with a bank bag, demanded a larger bag, and then ordered her to open the bag. Hebner testified that she feared that she would be shot or otherwise harmed if she did not comply with Winters' commands.

Based on this testimony, the district court found that Winters minimized his conduct by denying that he pointed his weapon at bank employees, denying that he ordered Mead to hang up the phone, and denying that he ordered employees to lie on the floor. Accordingly, the district court concluded that Winters did not fully accept responsibility for the forceful and violent aspects of his offense. A district court's decision to deny a two-point reduction under U.S.S.G. § 3E1.1(a) is appropriate when it determines the defendant's behavior is inconsistent with acceptance of responsibility. U.S.S.G. § 3E1.1, cmt. n.3. Indeed, a "'defendant who enters a guilty plea is not

entitled to an adjustment under this section as a matter of right.'" *United States v. Turner*, 324 F.3d 456, 463 (6th Cir. 2003) (quoting U.S.S.G. § 3E1.1, cmt. n.3); *United States v. Guthrie*, 144 F.3d 1006, 1012 (6th Cir. 1998).

Winters' argument that his misstatements are immaterial because they did not affect the Guideline calculation ignores the plain language of U.S.S.G. § 3E1.1(a), cmt. n.1. While the provision states that a defendant need not volunteer or admit conduct that is not relevant to the offense, it contains no license to affirmatively misrepresent conduct to the court or to the investigating pretrial services officer. In fact, the comment cautions that false denials of relevant facts are inconsistent with acceptance of responsibility. U.S.S.G. § 3E1.1, cmt. n.1 and n.3. Moreover, we have upheld denials of sentence reductions even where the deceitful conduct could not affect the defendant's sentencing range. *See, e.g. Bolden*, 479 F.3d at 460 (denial appropriate when defendant who had already pleaded guilty did not assist in recovery of property stolen by co-conspirators); *Guthrie*, 144 F.3d at 1012 (denial warranted when defendant who had already pleaded guilty blamed actions on bad advice of counsel and did not assist in recovering fruits of his offense); *see also United States v. Wallace*, No. 93-3287, 1994 WL 43460 (6th Cir. Feb. 14, 1994) (unpublished) (upholding denial where defendant blamed actions, in part, on poor advice).[2] As these

---

[2] In *Banks*, even though we vacated the denial of a U.S.S.G. § 3E1.1(a) reduction on the grounds that post-plea criminal conduct that gave rise to the denial was unrelated to the underlying offense, we nevertheless contemplated that an acceptance of responsibility reduction could later be denied "if the defendant gives false information to his probation officer and/or refuses to provide all financial information requested by his probation officer, or gives false information during his plea proceedings. . . ." 252 F.3d at 807.

cases demonstrate, minimizing one's conduct is a sufficient basis to deny an acceptance of responsibility reduction.

Insofar as Winters' second point is relevant, we have squarely addressed the issue of whether pointing a weapon at a victim during a robbery constitutes "otherwise using" a weapon, rather than mere brandishing. *See Bolden*, 479 F.3d at 461; *see also* U.S.S.G. § 1B1.1 cmt. n.1(C) and (I) (2006). In *Bolden*, we distinguished between displaying a firearm with an intent to intimidate, which is brandishing, and pointing a firearm at an individual and making a demand, which constitutes use beyond brandishing. *Bolden*, 479 F.3d at 461. We reasoned that the pointing of a firearm at an individual, coupled with a verbal order, conveys the implicit threat that failure to comply with instructions will result in immediate use of the weapon. *Id.* By contrast, merely brandishing the weapon in an attempt to intimidate an individual conveys only the mere possibility that the device may be used, but there is no imminent threat of use. *Id.*

The district court did not err in determining that Winters' conduct constituted use beyond mere brandishing. Like the assailants in *Bolden*, Winters pointed his weapon and issued orders, but did not explicitly threaten violence. Even without a specific, elucidated threat, Winters' conduct is sufficient to convey the message that failure to comply would result in being shot. *Bolden*, 479 F.3d at 461. Indeed, Mead and Hebner feared that they would be harmed if they did not follow Winters' instructions.[3]

---

[3]Moreover, Winters' reliance on *United States v. Moerman*, 233 F.3d 379 (6th Cir. 2000) and *United States v. Kushmaul*, 147 F.3d 498 (6th Cir. 1998) is misplaced as these cases predate the 2000 United States Sentencing Guideline definition of "brandished." As we explained in *Bolden*, the pre-

III.

Based on the foregoing reasons, we affirm the judgment of the district court.

---

2000 definition of "brandished" meant "the weapon was pointed or waived about, or displayed in a threatening manner." 479 F.3d at 462 (quoting U.S.S.G. § 1B1.1 cmt. n.1(C) (1998)). Similarly, as "otherwise using" means something more than simple brandishing, a defendant, prior to 2000, would have to do something more than point or waive about his weapon in order to receive the "otherwise using" adjustment. *Id.* In the 2000 version of the Guidelines, the definition of "brandish" was modified to its current definition of "all or part of the weapon was displayed, or the presence of the weapon was otherwise made known to another person, in order to intimidate that person, regardless of whether the weapon was directly visible to that person." U.S.S.G. § 1B1.1 cmt. n.1(C) (2006). As we observed in *Bolden*, pointing a weapon at an individual and issuing a command goes beyond mere brandishing under the post-2000 definition. 479 F.3d at 462.