**NOT RECOMMENDED FOR PUBLICATION**
File Name: 12a0065n.06

No. 10-1667

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

***Jan 19, 2012***

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | **ON APPEAL** FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| Ronald Lavar Johnson, | ) | WESTERN DISTRICT OF MICHIGAN |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | |

BEFORE:     MERRITT and COLE, Circuit Judges; VARLAN, District Judge.[*]

**MERRITT, Circuit Judge.** This is a direct criminal appeal after defendant's plea of guilty to one count of armed bank robbery in violation of 18 U.S.C. § 2113(a) and (d). Defendant raises three arguments on appeal: (1) his plea was rendered involuntary because the district court sentenced him above the sentence recommended by the advisory guidelines; (2) he should have received a three-level enhancement for "brandishing" instead of a four-level enhancement for "otherwise using" a dangerous weapon during a bank robbery pursuant to U.S.S.G. § 2B3.1(b)(2); and (3) a prior uncharged bank robbery should not have been considered in sentencing defendant. For the following reasons, we affirm the judgment of the district court.

_____

[*]The Honorable Thomas A. Varlan, United States District Judge for the Eastern District of Tennessee, sitting by designation.

**I.**

The FBI learned about defendant's involvement, along with several others, in a series of bank robberies from an informant who had been arrested on an unrelated drug charge. In each robbery, two or three black males entered the bank, removed concealed weapons, vaulted over the teller counter and removed money from the teller drawers. Another male would remain outside the bank as a lookout and getaway driver. The indictment in this case charges that on May 31, 2005, defendant Ronald Johnson and two codefendants, Solomon Hakeem Johnson and Keith Nickerson, robbed the First Bank of Lakeview in Morley, Michigan, while using a dangerous weapon. Ronald Johnson and Solomon Johnson entered the bank while Keith Nickerson waited in a vehicle outside. The two men inside the bank, both of whom appeared to be holding real weapons, yelled for all the customers to get on the floor. One of the two men yelled, "I am serious, get the fuck down. I will pop you." Solomon Johnson jumped the counter and took money from the teller drawers. Both men fled on foot and escaped. It turned out that both men had toy weapons or pellet guns. Defendant was not arrested for this crime until May 4, 2009, nearly four years later.

Defendant was charged in a two-count indictment: Count One charged robbery in violation of 18 U.S.C. § 2113(a) and (d) for the May 31, 2005, robbery in Morley, Michigan, described above. Count Two charged that between April 20 and September 9, 2009, Ronald Johnson, Solomon Johnson and Keith Nickerson conspired to obstruct justice and impede the prosecution of the May 31, 2005, robbery by manufacturing exculpatory evidence and seeking to pin the blame for the robbery on a deceased person. Defendant pled guilty to the robbery count; the obstruction of justice count was dropped. The presentence investigation report assigned a base level of 20 for the robbery

under U.S.S.G. § 2B3.1, with a two-level enhancement because the robbery occurred at a bank, a four-level enhancement because a dangerous weapon was "otherwise used" as provided by U.S.S.G. § 2B3.1(b)(2)(D), and a two-level enhancement for obstruction of justice, resulting in an offense level of 28. Defendant received a three-level reduction for acceptance of responsibility for a final offense level of 25. With a criminal history level of VI, defendant's guideline range was 110-137 months' imprisonment. The presentence report advised that there was reason to go above the advisory range due to defendant's participation in other bank robberies and an understated criminal history.

Defendant filed an objection to the four-level enhancement for using a dangerous weapon, contending that he should have received only a three-level enhancement. At his sentencing hearing, defendant renewed his objection to the four-level enhancement and argued for a sentence at the low end of the guideline range. The district court overruled defendant's objection and sentenced defendant to an above-guidelines sentence of 150 months. This appeal followed.

**II.**

**A. Voluntariness of Plea Agreement**

Defendant contends that his guilty plea should be rendered involuntary because the sentence imposed by the district court was above the guideline range presented in the presentence report. Defendant did not raise this issue below and we review for plain error.

Defendant concedes that the plea agreement states that the maximum sentence that the court can impose is 25 years and that this was also made known to him at his Change of Plea Hearing. Defendant's Br. at 14; *see also* Plea Agreement at ¶ 3; Plea Tr. at 7-8. The plea agreement also

states that "the Court . . . may impose a sentence within, above, or below the Guideline range, subject to the statutory maximum . . . ." Plea Agreement at ¶ 4. A defendant's guilty plea does not become involuntary simply because he receives an above-guideline sentence. *United States v. Quinlan*, 473 F.3d 273, 278 (6th Cir. 2007). In addition, the presentence report states that "[s]everal factors have been identified under 18 U.S.C. § 3553(a) that may warrant the Court sentencing the defendant outside the advisory guideline range." Presentence Investigation Report at ¶ 162. Defendant did not object to this statement in his filing of objections to the presentence report. So, although defendant claims he was surprised at the sentencing hearing by the above-guidelines sentence, the possibility of a higher sentence was made clear to defendant on more than one occasion and we find no error.

**B. Application of the Four-Level Enhancement for Use of a Dangerous Weapon**

Defendant argues that during the robbery he merely "brandished" rather than "otherwise used" a dangerous weapon and, therefore, his offense level should have been increased by three levels, rather than four.[1] The Guidelines define the terms as follows:

> "Brandished" . . . means that all or part of the weapon was displayed, or the presence of the weapon was otherwise made known to another person, in order to intimidate that person, regardless of whether the weapon was directly visible to that person. Accordingly, although the dangerous weapon does not have to be directly visible, the weapon must be present.

---

[1] Defendant does not dispute that the pellet gun he carried during the robbery was a "dangerous weapon" under the Guidelines. U.S.S.G. § 1B1.1 cmt. n.1(D) (dangerous weapon means "an object that is not an instrument capable of inflicting death or serious bodily injury but . . . closely resembles such an instrument").

> "Otherwise used" . . . means that the conduct did not amount to the discharge of a firearm but was more than brandishing, displaying, or possessing a firearm or other dangerous weapon.

U.S.S.G. § 1B1.1 cmt. n.1(C), (I). Finding a workable distinction between "brandished" and "otherwise used" is not a new issue. The question is when does conduct constituting "brandishing" become sufficiently threatening such that the weapon was "otherwise used?" The Court of Appeals for the First Circuit made the distinction as follows:

> [A] person may "brandish" a weapon to "advise" those concerned that he possesses the general ability to do violence, and that violence is imminently and immediately available. . . . Altering this general display of weaponry by [for instance] specifically leveling a cocked firearm at the head or body of a bank teller or customer, ordering them to move or be quiet according to one's direction, is a cessation of "brandishing" and the commencement of "otherwise used."

*United States v. LaFortune,* 192 F.3d 157, 161-62 (1st Cir. 1999) (emphasis and citation omitted).

According to the tellers on duty, during the course of the robbery, either defendant or his cohort Solomon Johnson yelled, "I am serious, get the fuck down. I will pop you." Given this specific threat of harm to the individuals in the bank, and the fact that it appeared that defendant had the means to carry out the threat, the district court did not err in determining that defendant's conduct constituted use beyond mere brandishing. Defendant's conduct went beyond the mere display of a weapon in order to intimidate: defendant issued orders and threatened specific violence ("I will pop you.") if those orders were not followed. As such, his conduct falls within the "otherwise used" category. *United States v. Winters*, 247 F. App'x 665, 669-70 (6th Cir. 2007) (citing *United States v. Bolden*, 479 F.3d 455, 461 (6th Cir. 2007)).

In both *Bolden* and *Winters,* we distinguished between displaying a firearm with an intent to intimidate, which is brandishing, and pointing a firearm at an individual and making a demand, which constitutes use beyond brandishing. *Bolden,* 479 F.3d at 461. We reasoned that the pointing of a firearm at an individual, coupled with a verbal order, conveys the implicit threat that failure to comply with instructions will result in immediate use of the weapon. *Id.* By contrast, merely brandishing the weapon in an attempt to intimidate an individual conveys only the mere possibility that the device may be used, but there is no imminent threat of use. *Id.*

Defendant tries to distinguish his conduct from that in *Winters* and *Bolden* by arguing that he did not actually point the gun at any one person and arguing that his words carried no meaning in this context. But defendant is mistaken – it is the explicit threat of violence in conjunction with holding the gun that puts this conduct within the "otherwise used" category instead of merely "brandishing." By issuing an explicit threat of harm if orders were not followed, defendant's conduct went beyond that in *Bolden* and *Winters* where no explicit threat of violence was made.

Any error in assigning a four-level enhancement instead of a three-level enhancement was harmless in this case because the district court said at the sentencing hearing, "I will state for the record that the sentence I am about to impose [150 months] would be imposed regardless of whether I had sustained that objection [to the four-level enhancement for "otherwise used" a dangerous weapon] or not." Sentencing Tr. at 29.

## C. Use of Uncharged Conduct to Increase Defendant's Offense Level

Defendant agreed to cooperate with federal law enforcement authorities by submitting to questioning regarding his involvement in other crimes, particularly robberies similar to the one he

was charged with here, so long as any information received during the questioning would not be used against him. On appeal, defendant claims that the district court impermissibly relied upon information that came from his statements to the government to increase his sentence. Specifically, defendant contends that the district court relied in part upon the fact that defendant participated in an uncharged bank robbery on October 31, 2003, that defendant disclosed during his questioning by the government. Defendant's Plea Agreement states that "statements made by the defendant during his cooperation will be protected as provided by Sentencing Guideline § 1B1.8." Plea Agreement at ¶ 5.

Guideline § 1B1.8(a) provides, "[w]here a defendant agrees to cooperate with the government by providing information concerning unlawful activities of others, and . . . the government agrees that self-incriminating information . . . will not be used against the defendant, then such information shall not be used in determining the applicable guideline range." However, if such information is known to the government prior to entering into the agreement, it is excepted from the rule. The information regarding the October 31, 2003, robbery appeared in the presentence investigation report at ¶ 111 based on proffers by defendant's criminal partners, all of whom detailed the many robberies committed by the group. At the sentencing hearing, the district court questioned the presentence investigator, who confirmed that the defendant's role in the October 31, 2003, robbery was known to the government prior to the time of defendant's proffers and found that the information about the October 31, 2003, robbery did not originate from statements protected by Guideline § 1B1.8(a). Sentencing Tr. at 33.

We note that the uncharged bank robbery was only one reason among several mentioned by the district court at the sentencing hearing for imposing an above-guidelines sentence. The court mentioned the serious and violent nature of some of defendant's past crimes, his light sentences for some of those crimes, and the fact that his criminal history score underrepresents the seriousness of his actual conduct over a number of years. The court stressed the need for a longer incarceration as a matter of public safety. Sentencing Tr. at 26-29.

For the foregoing reasons, the judgment of the district court is affirmed.