*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 09a0362p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

DENNIS LAY,

*Defendant-Appellant.*

No. 07-4062

>

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 07-00048—John R. Adams, District Judge.

Argued: January 16, 2009

Decided and Filed: October 13, 2009

Before: MERRITT, ROGERS, and WHITE, Circuit Judges.

_____

## COUNSEL

**ARGUED:** Donna Maria Grill, OFFICE OF THE FEDERAL PUBLIC DEFENDER,
Toledo, Ohio, for Appellant. Michael A. Sullivan, ASSISTANT UNITED STATES
ATTORNEY, Cleveland, Ohio, for Appellee. **ON BRIEF:** Donna Maria Grill, OFFICE OF
THE FEDERAL PUBLIC DEFENDER, Toledo, Ohio, Dennis G. Terez, OFFICE OF THE
FEDERAL PUBLIC DEFENDER, Cleveland, Ohio, for Appellant. Michael A. Sullivan,
ASSISTANT UNITED STATES ATTORNEY, Cleveland, Ohio, for Appellee.

ROGERS, J., delivered the opinion of the court. WHITE, J. (pp. 21-22), delivered
a separate concurring opinion. MERRITT, J. (pp. 23-32), delivered a separate opinion
concurring in part and dissenting in part.

_____

## OPINION

_____

ROGERS, Circuit Judge. Dennis Lay appeals the sentence he received following his
guilty plea to one count of traveling with intent to engage in illicit sexual conduct. Despite
Lay's arguments to the contrary, the sentencing court properly applied an enhancement for

unduly influencing a minor after finding that Lay failed to rebut the applicable presumption that he had unduly influenced the much younger victim. The district court also permissibly applied an enhancement for use of a computer to entice the minor, even though none of Lay's discussions with the minor about sexual activity occurred via computer. Lay did not qualify for a reduction for acceptance of responsibility because the district court found that Lay did not testify truthfully in all relevant respects, despite professing to accept responsibility. Furthermore, Lay's sentence is substantively reasonable, though Lay will face significant restraints on his freedom when he is on supervised release. We thus affirm Lay's sentence.

## I.  Background

Dennis Lay, a decorated U.S. Air Force veteran in his mid-50's, was working as a truck driver in California. In June of 2006, he made acquaintance online with the minor victim in this case, whom we will refer to as "M.V." M.V. appears to have initiated the online contact. Lay and M.V. exchanged messages online for a period of about two months. By sometime in July, they had begun communicating by telephone as well, though not openly. Lay made several calls to M.V.'s home phone that M.V.'s mother answered; when she answered, Lay hung up. Lay eventually sent a package to M.V. with a mobile phone, clothing, and over $200.

In early July, M.V.'s mother advised Ohio police that M.V. claimed to be in love with Lay and wanted to travel to California to live with him. An investigating officer, having discovered the mobile phone Lay had sent, used that phone to call Lay. Lay initially claimed that he had no knowledge that M.V. was only fifteen. However, the officer pointed out that M.V. had emailed pictures to Lay, and that Lay had sent clothing appropriate for a fifteen-year-old to M.V. Lay tried to change the subject by arguing that the police should be investigating M.V.'s mother for abusing M.V. The officer told Lay that M.V. was not bruised, as Lay claimed that M.V. had told Lay. The officer asked Lay for his address, birth date, and Social Security number; Lay hung up.

Despite being informed by the officer of M.V.'s age, Lay continued communicating with M.V. M.V. claimed that all conversations after late July were by phone, not by computer. In November, Lay mailed an envelope to a friend of M.V.'s with instructions for

the friend to deliver the contents to M.V.  Inside was another envelope containing two letters, four pictures (one of Lay), a plastic ring sizer, a music CD, a half-dollar coin, and $200.

One of the letters discussed Lay's relationship with M.V.  In it, Lay claimed that there was "NOTHING that will ever keep us apart," said that "I REALLY love you," and said that he wanted to "hug and kiss [you], and never stop."  In the second letter, Lay advised M.V. not to say anything out loud on the phone about Lay's visiting M.V. in Ohio out of fear of being overheard.  Lay also said that he would call and tell M.V. he couldn't come to Ohio, so as to deceive potential eavesdroppers.  But Lay wrote that he had made arrangements to fly to Ohio to see M.V. at the end of 2006.  Lay informed M.V. that he had made hotel reservations in a nearby Ohio town for a room with a king-size bed and room service.  He advised M.V. not to mention Lay's plans to anyone because if Lay were discovered, his "goose will be cooked."

Before his trip, Lay continued to talk to M.V. by phone.  Many of their conversations were sexually explicit.  In addition, they discussed a plan in which Lay would leave a message on M.V.'s answering machine directed to M.V.'s mother.  The message would advise the mother that Lay was the father of one of M.V.'s friends, that he was inviting M.V. to spend the holiday weekend with his family, and that he would pick up M.V. on Friday, December 29th, for a visit to last through January 1st.

Lay flew from California to Ohio on schedule for his liaison with M.V.  At the baggage claim in the Ohio airport, FBI agents arrested him pursuant to a warrant obtained after Lay boarded his flight.  Without telling M.V., M.V.'s mother had reported the contents of the last package to the police, and had given consent for police to record the last week of phone calls between Lay and M.V.

## II.  Judicial Proceedings

In January 2007, a federal grand jury indicted Lay with one count of knowingly traveling in interstate commerce for the purpose of engaging in illicit sexual conduct, in violation of 18 U.S.C. § 2423(b).  That statute criminalizes traveling in interstate commerce

with the intent to engage in sexual activity with a minor under the age of 16 who is at least four years younger than the defendant. *See* 18 U.S.C. §§ 2423(f), 2243(a).

In March 2007, Lay pled guilty to the charge. During the hearing for the entry of plea, the prosecution stated the facts of the case that the prosecution believed it was prepared to prove. The prosecution's statement included an assertion that Lay had left the answering machine message that was intended to get M.V.'s mother to let M.V. go off with Lay. Lay acknowledged engaging in the conduct described in the prosecution's statement.

In July 2007, the district court held a sentencing hearing. In addition to recommending a three-level reduction for acceptance of responsibility, the prosecution recommended three Sentencing Guidelines enhancements. These were a two-level enhancement under U.S.S.G. § 2G1.3(b)(2)(B) for unduly influencing a minor to engage in prohibited sexual conduct, a two-level enhancement under U.S.S.G. § 2G1.3(b)(3)(B) for use of a computer to entice a person to engage in prohibited sexual conduct with a minor, and a two-level enhancement under U.S.S.G. § 3B1.4 for using a minor in the commission of the crime. Lay testified at the sentencing hearing in order to contest these enhancements.

**A. Sentencing Testimony**

Lay testified that M.V. had initiated contact over the Internet. Lay claimed that at first he responded to long, unsolicited emails from M.V. with brief replies, but that their relationship gradually evolved into a friendship. He also testified that about two months into their relationship, they stopped using the Internet to communicate, instead only talking by phone. Lay gave more details about the relationship, and he began testifying about M.V.'s claims of "family problems."

At that point, the district court interrupted and warned Lay's counsel that "you may very well be, because of some of this testimony, jeopardizing whatever three-level acceptance of responsibility . . . . So if you've got some testimony regarding objections, specific objections, I will hear it, but I'm not going [to] entertain this long litany that arguably could be interpreted as a lack of acceptance of responsibility and offer an excuse for the conduct, so be forewarned."

Lay resumed testifying. Among other things, he testified that it was M.V.'s idea that Lay travel to Ohio for a visit. He testified that M.V. "was upset" when Lay indicated that he would be unable to come because of work. He also testified that none of the conversations relating to the trip to Ohio occurred on a computer.

Lay testified that M.V. had mentioned being in counseling for running away from home four times. He also testified that M.V. had claimed to be abused and told "a story of woes," including a claim that M.V.'s mother and sister exchanged Christmas gifts, but did not give M.V. any gifts for Christmas.

Lay concluded his direct examination by stating that "You know, I admit what I did coming back to Ohio was terribly wrong and I am the adult here and I accept full responsibility for that. My mistake was when I found out [M.V.'s] real age, I didn't stop it. I allowed myself to become closer to [M.V.] and I didn't stop it. That was my mistake and that was what I pled guilty to. And I take full responsibility for that."

Under cross-examination, Lay claimed to be "just learning how to use things" on his computer, claimed that he was "not very experienced with computers," and claimed that he did not "know how to email pictures." But he admitted that he knew how to scan pictures and that he had booked his Ohio trip flights and hotel online.

Lay further claimed, in response to the prosecutor's questions, that he had no idea that M.V. was fifteen for the first "couple of months" of their relationship. Lay claimed that during this initial period, while having near-daily phone conversations with M.V., Lay never thought that M.V. sounded like a child, and M.V. never mentioned school or family problems to Lay. Lay also claimed that he never asked what M.V. did for a living, despite assuming that M.V. was twenty-five.

Lay admitted that, in response to perceived abuse, he made disparaging comments about M.V.'s mother and sister. He admitted saying, regarding the mother, "That woman needs help. She needs to be looked at. She needs to—she's got a problem."

Lay also admitted that he sometimes quizzed M.V. on schoolwork, and gave advice on things like styling M.V.'s hair. He admitted sending M.V. gifts and money.

Lay denied having left the deceptive answering machine message for M.V.'s mother, although he admitted that he had discussed the subject with M.V. He said "I don't recall ever talking to the voice mail." The prosecution played a tape recording in court, apparently of Lay leaving the deceptive message, and then asked Lay if he remembered leaving the message. Lay said "I don't recall, but that is—what is that referring to?" Lay later stated that M.V. "asked me leave a message" but that Lay told M.V. "that that was against my better judgment, but we were talking about things that, you know—I can't make out exactly what that is. If that's me." On further questioning, "I don't know if there was voice mail that they had. If it's been recorded, I don't know what it's from."

On being asked about the conversation in which he and M.V. had specifically discussed leaving the message, Lay claimed that "I didn't know it was being recorded, but I don't know that there was even voice mail there." He claimed to have told M.V. "Let's call this all off," and that M.V. "got very upset with me" and was "asking me, 'You need to say this. You need to say that,' but I didn't know this was being recorded." Lay also claimed, "I didn't know that they had an answering machine. It never came on."

In response to repeated playing of tapes of conversations between Lay and M.V. regarding the message, Lay continued to claim that "I wasn't aware that I was leaving a message on the answering machine." "Those are the things [M.V.] asked me to say, yes. We were practicing it over and over. Like I said, I wasn't aware I was being recorded."

When asked, "That was you saying it, right?" Lay responded, "Yeah, I would say that was—you know, that was my voice. Like I said, I'm—I wasn't aware I was being recorded when we were saying this." Lay continued to deny leaving the message.

When asked how he expected to spend a weekend with M.V. when he had not left the message, Lay claimed that M.V. had told him, "I can get away for the weekend." Lay further said, "I didn't know that [M.V.] was going to use that or recorded that to be used that way. I was just informed that it's okay if I come and spend the weekend."

In response to further questions, Lay admitted that when he traveled to Ohio, he knew that M.V. was fifteen. "And you had every intention [of] engaging in sexual activity

when you arrived in Ohio, didn't you?" "I accepted responsibility for that, yes." "Is that a yes?" "Yes."

The prosecutor had Lay repeat his claim that Lay only traveled to Ohio at M.V.'s insistence. The prosecutor then asked if Lay had told M.V., "I just can't wait to hold you for real. It will be the best day of my life when that day comes." Lay responded, "That's quite possible, yes."

The prosecution did not present any witnesses. The court heard argument on the various sentencing enhancements proposed by the prosecution.

## B. Undue Influence

With respect to the enhancement for unduly influencing a minor, Lay argued that it was M.V.'s idea for Lay to come to Ohio and that M.V. lied to and manipulated Lay. Lay thus suggested that the sentencing enhancement for undue influence would be inappropriate because M.V. supposedly had influenced Lay just as much as Lay had influenced M.V.

The court rejected this argument and applied the enhancement, discounting M.V.'s statements because M.V. was "vulnerable" and "troubled," and had been "lured into this relationship by [an] individual who is 38 years older" than M.V.

The court anticipated the acceptance of responsibility issue. In its discussion of undue influence, the court stated, "I think the record will speak for itself, but particularly with the defendant's demeanor, his answers to the question[s], arguably this is a situation where the defendant is attempting to shift all of the responsibility and the blame for this conduct to the victim. . . . [T]hat is not acceptance of responsibility."

Returning to the undue influence enhancement, the court stated "Your argument is pretty much . . . this 15-year-old lured or caused this [53]-year-old man . . . lured him into this conduct and we both know that isn't the case, number one; number two, this individual . . . was obviously troubled and the defendant in this case continued to lure [M.V.] with gifts, with money, with packages, even after he knew and had been confronted with the fact" that M.V. was fifteen.

The court further stated

> I think it is clear that the defendant otherwise unduly influenced the minor to engage in sexual conduct. There has not been a showing that would rebut the [Sentencing Guidelines'] presumption [of undue influence] based upon the substantial difference in age between the participant and the minor.
>
> I would indicate that the court believes that clearly the defendant through the use of his packages, his money, his cell phone as well as his conversations, admitted conversations with this young, troubled 15-year-old, clearly contrary to what has been argued here, the manipulator was the defendant. The manipulator was not the victim, and I am convinced that this is the case and it is clear the defendant, as we will address later, has not at least in my mind under the guidelines acknowledged responsibility for this conduct, in fact, contrary thereto.
>
> He has spent the most part of the morning on the witness stand trying to blame the victim that all of this conduct, that his trip to . . . Ohio was . . . precipitated by the victim, not by himself.
>
> Let's be clear, there's no dispute that Mr. Lay arrived here with a hotel room that he had booked with a king size bed in it so that he and this 15-year-old could sleep together. There's no doubt what the intent was when he came to town.

## C. Use of a Computer to Entice

Lay argued that the enhancement for using a computer to entice a minor was inappropriate because the evidence showed that none of the communication about sexual conduct had occurred via computer. After pointing to the testimony and statements that indicated such, he noted that the prosecution had not produced evidence to the contrary and suggested that if such evidence existed, "they would have attached the emails and they would have had them in your hands."

The court overruled the objection, stating "it's undisputed that the defendant met the victim in this case through the use of a computer." "The portion of the advisory guidelines that the court would reference would be the use of a computer or interactive computer service to entice, encourage, offer, to engage in prohibited sexual conduct with a minor."

"[C]ounsel has called to my attention testimony of his client as a basis for the court not imposing the enhancement, and I will note for the record that . . . unfortunately, I find the defendant's testimony with regard to his use of a computer to be not credible and disingenuous at best." The court noted that Lay had admitted having a scanner, booking reservations for airline tickets and a hotel stay online, and knowing how to use chatrooms. "So . . . I do not believe much of his testimony when he attempts to minimize his sophistication that comes to the use of technology."

The court then held, while noting that "perhaps it's a matter for further review," that merely using a computer to contact, communicate with, and entice a fifteen-year-old to begin a relationship was sufficient for the enhancement to apply.

## D. Use of a Minor

Lay contested the enhancement for use of a minor in committing the offense. The prosecution sought this enhancement because Lay had sent his last package of gifts for M.V. to a minor friend of M.V.'s. The minor friend was to give the package to M.V., thus allowing M.V. not to receive the package at home, where it would be subject to detection by M.V.'s mother. Lay argued that the evidence did not show that Lay knew that the friend was a minor. The prosecution argued that circumstantial evidence supported Lay's knowledge of the friend's status as a minor. The district court ruled for Lay and did not apply the enhancement; the prosecution does not appeal this ruling.

## E. Lay's Statement

Lay exercised his right to be heard before the court pronounced sentence and made the following statement:

> Well, Your Honor, like I stated when I was on the witness stand, I am the adult here in this situation and I accept full responsibility for my actions and I know it was terribly wrong. I've abused drugs in the past or I was under the influence of drugs while this was transpiring and now that I've been sober for the last nine months, I see with a clear head just how terribly wrong this really was. That's why I also requested the drug treatment program.

> But I accept full responsibility for my intentions here and I know how bad it looks in the eyes of the public and I would like to apologize to the victim's mother. I know it's caused problems for her, and I think it's time we move on and we both get our lives back together again.
>
> And I will seek counseling or treatment for my situation and I don't think a lengthy prison sentence would actually benefit me as much as counseling would, as well as the drug treatment, but like I said, I accept responsibility for everything that I've done here. I am dreadfully sorry for it.

## F. Acceptance of Responsibility

In calculating an advisory Guidelines range, the district court noted that Lay's base offense level was 24. The two two-level enhancements resulted in an adjusted offense level of 28. The district court then denied Lay any reduction for acceptance of responsibility.

After reading relevant portions of the Guidelines, the court stated:

> In this particular matter, the court has had the opportunity to see and observe the defendant's demeanor and to consider his testimony as it relates to numerous instances of relevant conduct.
>
> . . . [O]ne important part is the defendant's testimony when confronted with the tape-recorded statements that are clear. It's clear to the court from listening to the tapes that these are—in fact, clearly a layman listening to the voice would be well aware that the recorded conversations are those of the defendant with the minor in this case, and it's clear that even confronted with that very compelling evidence the defendant clearly attempted to deny and/or avoid admitting what is readily apparent to this court that indeed the telephone conversations that were played were calls made by this defendant.
>
> . . . [T]he defendant's testimony in this case was nothing more than an attempt to divert and to cast blame and [aspersions] on the defendant's victim in this matter.

The court noted that M.V. "is clearly, without any doubt . . . troubled." It noted the lack of "a male figure" in M.V.'s life, and said that Lay "preyed upon" M.V.'s "vulnerabilities, did so with the use of transferring gifts, money, and other conduct through his numerous telephone calls, his own admissions, speaking for considerable periods of time

on almost a daily basis with this victim" in order "to engage in sexual conduct with this 15-year-old."

The court further stated:

> . . . It's also clear that this defendant in careful reading of his testimony is attempting to—in my notes, it's just overwhelming to me that this defendant clearly attempts to argue that, in fact, he was the one who had been lured into this conduct by the 15-year-old. . . . He was doing things against his better judgment, him being the 53-year-old, but yet this 15-year-old in his mind was the one in essence persuading him to engage in this conduct.
>
> And I am without any doubt, any doubt in my mind, that this defendant does not accept responsibility for his conduct. While he has pled, while he has verbalized what he verbalized, what he hopes will be sufficient information for the court to grant him the acceptance of responsibility, his testimony reveals otherwise. And his testimony reveals an individual who believes that this 15-year-old is at fault for this conduct and this 15-year-old is not, and that is the tragedy here that his—he does not understand and does not—is not willing to admit he is the adult and he is the predator and that he is the one who's preyed upon this individual.
>
> And for those reasons, I would say for any reviewing court, that not only the testimony, but the demeanor and the attitude of the defendant fully supports the court, in my mind, not granting, nor will I grant acceptance of responsibility under these circumstances.

**G. Sentence**

The district court noted that the adjusted offense level of 28, coupled with Lay's Criminal History Category of I, produced a Guidelines range of 78-97 months. The court then sentenced Lay to imprisonment for 84 months, followed by 20 years of supervised release. Among the conditions of supervised release were that Lay will be required to "submit any proposed changes to residence and/or employment to the probation officer at least 20 days prior to obtaining the intended changes," Lay will be "prohibited from accessing any online computer service at any location, including employment or education, without prior written approval of the U.S. probation officer or the court," that Lay will be

required to consent to periodic unannounced searches of and installation of monitoring software or hardware on any computer systems he may use, and that Lay will be required to submit his "place of business" to warrantless search by the probation office "based upon . . . evidence of the violation of a condition of release."

Lay appeals his sentence, arguing that it is both procedurally and substantively unreasonable.

### III.  Analysis

Because the district court's factual findings are not clearly erroneous, *see United States v. Hazelwood*, 398 F.3d 792, 795 (6th Cir. 2005), and because the legal conclusions based on these findings were correct, *see United States v. King*, 516 F.3d 425, 427 (6th Cir. 2008), Lay's sentence is not unreasonable.

### A.  Undue Influence

The district court properly applied the Sentencing Guidelines enhancement for undue influence of a minor.  The court found that Lay had not made a factual showing sufficient to overcome the applicable rebuttable presumption that the age difference between Lay and M.V. indicated undue influence.  This finding is not clearly erroneous.

Lay's testimony, if believed, is consistent with a situation in which a willing minor sought out sexual activity with an adult.  But not only did the district court find Lay not credible, it found facts that are consistent with a manipulative adult's building a relationship with a minor for the purpose of eventual sexual activity.  These facts, along with the applicable presumption of undue influence created by Lay's greater age, support the application of the undue influence enhancement.

The Sentencing Guidelines provision states "If (A) the offense involved the knowing misrepresentation of a participant's identity to persuade, induce, entice, coerce, or facilitate the travel of, a minor to engage in prohibited sexual conduct; or (B) a participant otherwise unduly influenced a minor to engage in prohibited sexual conduct, increase by 2 levels."

U.S.S.G. § 2G1.3(b)(2).[1]  The Guidelines Commentary states that to determine whether

the undue influence provision in subsection (B) applies,

> the court should closely consider the facts of the case to
> determine whether a participant's influence over the
> minor compromised the voluntariness of the minor's
> behavior.
>
> In a case in which a participant is at least 10 years older
> than the minor, there shall be a rebuttable presumption,
> for purposes of subsection (b)(2)(B), that such participant
> unduly influenced the minor to engage in prohibited
> sexual conduct.  In such a case, some degree of undue
> influence can be presumed because of the substantial
> difference in age between the participant and the minor.

*Id.* § 2G1.3 cmt. n.3(B).  The Commentary is "authoritative."  *Stinson v. United States*,
508 U.S. 36, 38 (1993).

Although evidence suggested that M.V. proposed a meeting with Lay, that M.V.
lied to Lay about being abused, and that M.V. initiated the original communication with
Lay, these facts do not prove that M.V. was not unduly influenced.  And these facts are
consistent with a victim who has been influenced by a sexual predator.  The district court
did not find that Lay had never discussed sex with M.V. before M.V. suggested that Lay
visit, nor did it find facts that supported an adult's being taken in by a fifteen-year-old's
tale of woe.

The district court may not have given certain facts as much weight as Lay would
have preferred, but it did not "ignore" them.  The district court's factual findings—that
Lay, in pursuit of a sexual liaison, continued to ply a vulnerable and troubled fifteen-
year-old with gifts and attention—are not clearly erroneous.  An appellate court may not
reverse a finding of fact "simply because [it] would have decided the case differently,"
but must affirm unless "left with the definite and firm conviction that a mistake has been
committed."  *Easley v. Cromartie*, 532 U.S. 234, 242 (2001) (quotations omitted).  The

---

[1]Subsection (A) of this provision conceivably could have applied to Lay's leaving of the
deceptive answering machine message for M.V.'s mother—a knowing misrepresentation of Lay's identity
to facilitate the travel of M.V. to engage in prohibited sexual conduct.  But the prosecution sought the
enhancement only under subsection (B).

district court had before it a record which may have supported an alternate outcome, but that does not justify reversal under a clearly erroneous standard.

Nor did the district court err by ignoring the victim in its inquiry. The "victim-focused inquiry" we required in *United States v. Chriswell* makes this enhancement inapplicable if no victim exists to be influenced. 401 F.3d 459, 469 (6th Cir. 2005). Some evidence that the minor was in fact influenced thus must appear in the record—as it does here with the district court's finding that M.V.'s particular troubled characteristics gave Lay a vulnerable victim to influence with his manipulative tactics. But a district court does not err merely because, as part of "closely consider[ing] the facts of the case," it considers the extent to which the defendant engaged in manipulative behavior as bearing on the question of whether the defendant has rebutted the presumption that he unduly influenced the minor.

Cases in which district courts found that a defendant did not unduly influence a victim do not support a different outcome in this case. For instance, the Eighth Circuit upheld as not clearly erroneous a district court's factual finding that the defendant "did nothing that compromised [the minor's] volition, however misguided it may have been." *United States v. Myers*, 481 F.3d 1107, 1112 (8th Cir. 2007). Where evidence could be construed both for and against an argument that the minor was not influenced, the appellate court deferred to the district court's factual findings on the question, as we do in this case.

Furthermore, "involvement of a minor" is not an impermissibly "double counted" element, as Lay argues. Lay pled guilty to *traveling with the intent* to engage in impermissible sexual conduct with a minor. The district court applied an enhancement for *unduly influencing* the minor to engage in impermissible sexual conduct. The travel-with-intent conduct set Lay's base offense level, and the undue-influence conduct supported an enhancement. Improper double counting occurs when "precisely the same aspect" of the defendant's conduct is "factor[ed] into his sentence in two separate ways." *United States v. Farrow*, 198 F.3d 179, 193 (6th Cir. 1999). No such double counting is involved here. A criminal can travel to engage in impermissible sexual conduct with

a minor without unduly influencing a minor, so applying an enhancement for undue influence when the criminal does unduly influence a minor is not double counting. *United States v. Wise*, 278 F. App'x 552, 563 (6th Cir. 2008).

The district court properly applied the undue influence enhancement.

## B.  Use of a Computer

The district court's application of the use of a computer enhancement was not reversible error because Lay began his pursuit of an inappropriate sexual relationship while using a computer to communicate with M.V.  This enhancement may be applied even if the defendant did not send specific sexual requests by computer.

Although Lay did not explicitly propose sexual relations in a computer message, Lay communicated via computer with M.V. for one to two months with the apparent intention of having prohibited sexual relations with M.V.  Enticement does not require crude specification of intent.  When a predator uses a computer to make friends with a potential victim, the enhancement may apply because the predator is using a computer to entice the minor to engage in prohibited sexual conduct, even if the minor does not yet realize the predator's intent.

To allow a predator to use a computer to develop relationships with minor victims, so long as the ultimate consummation is first proposed through offline communication, would not serve the purpose of the enhancement.  The computer-provided threat of anonymous one-to-many communications by a sexual predator exists whether the predator uses the Internet to make explicit proposals of sexual activity or merely to strike up friendships with potential victims.  Either course allows the predator to contact more potential victims, and to make initial contacts more insidiously, than would be possible offline.  Application of the enhancement in this case was therefore warranted.

This is not a case in which a defendant and a victim, after an innocent encounter via computer, developed a relationship offline that subsequently evolved into an inappropriate sexual relationship.  Lay admitted to communicating with M.V. by

computer for about two months, and the district court did not find Lay's attempts to minimize the significance of his computer communications credible. Moreover, the computer communication ceased only at the time Lay began plying M.V. with gifts, including the phone that replaced the computer as a means of communication.**2** That is enough, on these facts, to uphold application of the enhancement for using a computer to entice the minor.

The only possible problem with the application of the enhancement on these facts is an inconsequential citation error. The text of the provision provides for a two-level increase if "the offense involved the use of a computer or an interactive computer service to (A) persuade, induce, entice, coerce, or facilitate the travel of, the minor to engage in prohibited sexual conduct; or (B) entice, encourage, offer, or solicit a person to engage in prohibited sexual conduct with the minor . . . ." U.S.S.G. § 2G1.3(b)(3).

However, the presentence report appears to have erred by citing subsection (B) of this provision, and the district court and parties echoed that error. Subsection (B), which applies when the defendant entices "a person" to engage in illegal sexual conduct with the minor, does not apply without three people—the defendant, the minor, and the third person who is being enticed. The district court and parties made arguments as if proceeding under subsection (A), which applies when the defendant uses a computer to entice the minor directly. Nevertheless, they all cited subsection (B), which by its terms does not appear to apply to Lay's situation. But Lay does not argue that this citation error undermines his sentence, and the error appears to be of no consequence. There is

---

**2**This fact alone calls into question the plausibility of Lay's account. Lay would have the district court believe that after a month or two of sending terse responses to emails about mundane events, Lay innocently decided to mail a package of money, adolescent clothes, and a telephone to a person he still believed to be twenty-five, and not until after some significant number of furtive calls did Lay discover that M.V. was fifteen and attempting to communicate without parental knowledge. "Innocent" online friendships do evolve into offline contacts, but these facts hardly suggest such a case. The district court's decision to draw reasonable inferences about Lay's intentions rather than crediting his testimony is thus not clearly erroneous.

thus no reason not to uphold the application of the enhancement as if the parties and court had cited subsection (A).**3**

Because Lay used a computer to persuade, induce, or entice M.V. to engage in prohibited sexual conduct, the district court appropriately applied the use of a computer enhancement.

## C. Acceptance of Responsibility

The district court's denial of the reduction for acceptance of responsibility was not erroneous, notwithstanding Lay's guilty plea and statement purporting to accept responsibility. The court explicitly found Lay to be not credible or honest while testifying on certain relevant matters. "I do not believe much of his testimony when he attempts to minimize his sophistication that comes to the use of technology." "[D]efendant clearly attempted to deny and/or avoid admitting what is readily apparent to this court that indeed the telephone conversations that were played were calls made by this defendant." As the district court had the opportunity to observe Lay's demeanor while he testified, its findings are entitled to deference. And "[d]enial of the reduction for acceptance of responsibility is proper if the court believes the defendant testified untruthfully." *United States v. Bonds*, 48 F.3d 184, 189 (6th Cir. 1995); *see also* U.S.S.G. § 3E1.1(a) cmt. n.1(a).

The record does not reflect that the district court's findings are clearly erroneous. It is true that a sympathetic reading of Lay's testimony suggests that, rather than frivolously contesting the facts surrounding the answering machine message, perhaps he

---

**3**Because Lay did not object to the presentence report's citation of the wrong subsection before sentencing, he forfeited his right to object below on that ground. *See* Fed. R. Crim. P. 32(f)(1) (requiring the filing of written objections within 14 days of receipt of the PSR). Moreover, Lay did not make any argument about this error in this court, nor did anyone discuss this error at oral argument. If there was error, it was not plain error as contemplated by Fed. R. Crim. P. 52(b). Plain error review is only available to correct an error that "affect[s] substantial rights" so as to "seriously affect the fairness, integrity or public reputation of judicial proceedings." *United States v. Olano*, 507 U.S. 725, 736 (1993) (quotation omitted). The unobjected-to citation of the wrong subsection of an applicable Guidelines enhancement, when all parties argued as if the proper subsection had been cited, is not such an error because it makes no difference to Lay's substantial rights. Had Lay objected to the PSR on this ground, the probation officer could have merely revised the PSR to cite the proper subsection, *see* Fed. R. Crim. P. 32(f)(3) (permitting revision "as appropriate" after receiving objections), and the parties would have made the same arguments that they made under the wrong subsection.

was genuinely confused about the source of the recordings that the prosecution played. But this most sympathetic reading of his testimony, without the advantage of observing his demeanor, is not required in light of the district court's findings. *See* U.S.S.G. § 3E1.1(a) cmt. n.5. And the fact that Lay, at his entry of plea hearing, admitted leaving the message undermines his attempts at the sentencing hearing to deny leaving the message.

Lay argues that the district court misinterpreted his testimony as an attempt to "blame the victim," but that Lay actually admitted his guilt, including all the elements of the charged offense. But admitting the elements of criminal conduct while "constantly attempt[ing] to mischaracterize that conduct, 'spin' it, so to speak, and minimize [the defendant's] responsibility" will support a finding that a defendant has not accepted responsibility. *United States v. Wolfe*, 71 F.3d 611, 616 (6th Cir. 1995); *see also* U.S.S.G. § 3E1.1(a) cmt. n.3.

Lay argues that upholding his sentence will put defendants in an impossible position of being unable to contest improper sentencing enhancements without jeopardizing credit for acceptance of responsibility. But this argument ignores the court-found facts of this case. The district court did not find Lay to be fully forthright or to have admitted all relevant conduct. Had the court made such findings, and also denied credit for acceptance of responsibility, a quite different case might be presented. There is no reason to assume that in some other case a defendant who had not unduly influenced a minor would not be able to present evidence rebutting the presumption of undue influence without jeopardizing credit for acceptance of responsibility. *See, e.g.*, *Myers*, 481 F.3d at 1112 & n.7 (defendant successfully contested the undue influence enhancement while receiving credit for acceptance of responsibility).

Certainly, the position of a defendant who must testify in order to contest an improper enhancement requires the treading of a fine line. But the solution to that dilemma is to testify honestly, without falsely denying relevant conduct. Regardless of what the members of this panel might have done had they been required to pronounce

sentence on Lay, they cannot overturn the district court's factual findings unless clearly erroneous, which these findings are not.

## D. Reasonableness of the Sentence

Lay's arguments that his sentence is unreasonable are unavailing. To the extent that Lay argues that his sentence is unreasonable because it is procedurally tainted, his arguments are without merit as discussed above. To the extent Lay argues that his sentence is substantively unreasonable for other reasons, he fails to show that the district court abused its discretion by misweighing § 3553(a) factors or by imposing supervised release conditions unrelated to public safety.

A sentence may only be overturned if the district court abused its discretion. *Gall v. United States*, 128 S. Ct. 586, 597 (2007). A within-Guidelines sentence enjoys a rebuttable presumption of reasonableness. *United States v. Vonner*, 516 F.3d 382, 389-90 (6th Cir. 2008) (en banc). Lay offers little to rebut that presumption.

Lay's arguments that the district court abused its discretion amount to a litany of complaints about the way that the district court weighed the factors listed in 18 U.S.C. § 3553(a). It is true that a sentence may be substantively unreasonable if the district court failed to consider pertinent § 3553(a) factors or gave "an unreasonable amount of weight to any pertinent factor." *United States v. Collington*, 461 F.3d 805, 808 (6th Cir. 2006) (quotation omitted). But the court did not ignore the factors Lay complains did not receive enough emphasis; it merely weighed them against the other listed factors and sentenced Lay accordingly. The district court did not abuse its discretion.

Lay also argues that the conditions of his supervised release are too onerous and will make it difficult for him to obtain employment. But "where a condition of supervised release is reasonably related to the dual goals of probation, the rehabilitation of the defendant and the protection of the public, it must be upheld." *United States v. Bortels*, 962 F.2d 558, 560 (6th Cir. 1992) (citation omitted). The conditions of which Lay complains are designed to protect the public from potential recidivism. The public has an obvious interest in monitoring the Internet use, employment, living arrangements,

and social affairs of those who have been convicted of sexual offenses against minors, to prevent opportunities to commit such crimes again. While this interest would not justify every conceivable restraint on the liberty of a convicted felon, Lay offers no reason in this case to conclude that the district court improperly balanced the legitimate interests of society against his liberty interests. Nor has Lay presented any reason that his age should make a difference to this analysis. Lay does not show that the district court abused its discretion in imposing the supervised release component of his sentence.

## IV. Conclusion

For the foregoing reasons, we affirm Lay's sentence.

———————————

**CONCURRENCE**

———————————

WHITE, Circuit Judge, concurring. I concur and write separately to make some additional observations regarding the undue-influence enhancement. Judge Merritt's straightforward analysis directly and fairly presents the issue – on this record, where all indications are that the minor victim was anxious to meet with and have a sexual relationship with Lay, and that the minor victim initiated communications with Lay to that end, was the district court's finding of undue influence within the meaning of § 2G1.3(b)(2)(B) erroneous as a matter of law because it was not based on a victim-focused inquiry? I agree with Judge Rogers that while the district court reasonably could have concluded otherwise, the record is adequate to support the conclusion that the presumption of undue influence based on the age discrepancy was not rebutted.

The district court properly began its analysis with a recognition of the rebuttable presumption of undue influence that applies where the defendant is at least ten years older than the victim. This presumption can of course be overcome, and the court is directed to "closely consider the facts to determine whether a participant's influence over the victim compromised the voluntariness of the victim's behavior." Accepting that the focus must be on whether the victim's voluntariness was compromised, I conclude that a district court's consideration of "voluntariness" can go beyond the victim's perception of his or her conduct. That is, the victim may believe that his or her participation is entirely voluntary, and may send that message to the defendant, but if the court concludes that there were specific identifiable factors or needs operating in the victim's decision-making process and that the defendant exploited, preyed upon, or even simply catered to those factors or needs, leading to those factors or needs playing a significant role in the victim's "voluntary" participation, the court may properly conclude that the rebuttable presumption has not been rebutted. Here, there was evidence to support that the victim was lonely, felt mistreated by family members, and was searching for emotional and material recognition. Accepting that the victim welcomed and

encouraged Lay's interest, the court could nevertheless reasonably conclude that the victim's voluntariness was compromised by Lay's providing the victim with the emotional support and material possessions the victim sought.

---

### CONCURRING IN PART AND DISSENTING IN PART

---

MERRITT, Circuit Judge, concurring in part and dissenting in part. The district court improperly added four points to Dennis Lay's offense level at sentencing — two for unduly influencing a minor and two for using a computer. The application of these enhancements contravenes the clear, plain language of the Guidelines and should be reversed. These two enhancements added approximately three years to Lay's sentence. Additionally, the twenty-year term of supervised release, which will not expire until Lay is 82 (if he lives that long), is substantively unreasonable and should also be reversed. I, therefore, respectfully dissent.

Section 2G1.3(b)(2)(B) of the Sentencing Guidelines provides for a two-point sentence enhancement if the defendant "unduly influenced a minor to engage in prohibited sexual conduct." The application notes state that "[i]n determining whether subsection (b)(2)(B) applies, the court should closely consider the facts of the case to determine whether a participant's influence over the minor compromised the voluntariness of the minor's behavior." There is no indication here that the voluntariness of the minor's behavior was compromised, and much uncontroverted evidence that the victim was a voluntary participant in, and partial instigator of, the planned sexual conduct. This voluntariness in no way vitiates Lay's conviction or his culpability for his actions. But it does preclude the application of this sentencing enhancement.

The district court also added a two-point enhancement under § 2G1.3(b)(3)(B). The majority concedes that this enhancement was clearly inapplicable, but dismisses this as a mere citation error, concluding that the district court really meant to apply § 2G1.3(b)(3)(A). Even if we were permitted to swap in the enhancement that the district court "should" have used, it would not change the result. Section 2G1.3(b)(3)(A) provides for a two-point sentence enhancement "[i]f the offense involved the use of a computer . . . [to] persuade, induce, entice, coerce, or facilitate the travel of, the minor to engage in prohibited sexual conduct." The majority admits that there is no evidence

that Lay ever discussed sexual activity over the computer with the victim.  Indeed, all evidence indicates that their relationship did not become romantic or sexual in nature until after they had stopped communicating over the Internet.  Since the enhancement requires that the computer be used to "persuade, induce, entice, coerce, or facilitate the travel of, the minor *to engage in prohibited sexual conduct*," that should be the end of the inquiry.

Finally, after serving seven years in prison, Lay will have to spend the next twenty years of his life asking the probation office for permission any time he wants to use a computer, apply for a job, or move to a new residence, among many other severe restrictions.  The combination of the onerousness and length of Lay's term of supervised release renders it substantively unreasonable.

### I. Unduly Influencing a Minor

I agree with the majority that the application of the two-point enhancement for unduly influencing a minor did not constitute impermissible double counting.  But I cannot agree that the facts of this case permit its application here. The authoritative commentary makes explicit what is clearly implied by the use of the term "unduly influenced" in the text:  "the court should closely consider the facts of the case to determine whether a participant's influence over the minor compromised the voluntariness of the minor's behavior."  It is true that a rebuttable presumption of undue influence applies here, since Lay was 38 years older than his victim.  But when uncontroverted evidence indicates that the voluntariness of the minor's behavior was never compromised, that presumption has been rebutted.

The district court erred by focusing exclusively on Lay's conduct and completely overlooking the dispositive question:  was the voluntariness of the victim's behavior compromised by the defendant's actions?  The district court justified the enhancement by stating, "I would indicate that the court believes that clearly the defendant through the use of his packages, his money, his cell phone as well as his conversations, admitted conversations with this young, troubled 15-year-old, clearly contrary to what has been argued here, the manipulator was the defendant." These observations bear no logical

relationship to the question of the victim's voluntariness. It may be possible in some cases to use the defendant's behavior to draw inferences about the voluntariness of the victim's behavior. But there has been no attempt to do so here. The district court simply listed Lay's actions, ignored the victim's behavior entirely, and concluded without analysis that the enhancement must apply.

The majority's approach is slightly different, but no less erroneous. Unlike the district court, it acknowledges that "evidence **suggested** that [the victim] **proposed** a meeting with Lay, that [he] lied to Lay about being abused, and that [he] initiated the original communication with Lay." But the majority concludes that "these facts are consistent with a victim who has been influenced by a sexual predator." This sets up an unappealing Catch-22: If the facts show that the victim's participation was involuntary, the enhancement for undue influence will apply. And if the facts show that the victim's participation was voluntary, well, that just proves that he must have been "influenced by a sexual predator."

The majority states that the district court's factual finding that Lay sent the victim gifts is not clearly erroneous. That is true, but beside the point — the question is whether it was legal error to conclude from these facts that the victim was unduly influenced, and this question requires us to examine the voluntariness of the victim's behavior, which the majority fails to do. Instead, it characterizes this as a purely factual question that we may reverse only if we find clear error. But the applicability of the enhancement is a mixed question of fact and law. I do not dispute the district court's findings about either Lay's or the victim's behavior; but I disagree that those facts can serve as the basis for the *legal conclusion* that Lay unduly influenced the victim within the meaning of §2G1.3(b)(2)(B).

Besides contravening the text and authoritative application notes, the majority opinion stands in stark contrast to all reported decisions from the Courts of Appeals interpreting the undue-influence enhancements, including binding precedent from this Court. In *United States v. Chriswell*, 401 F.3d 459 (6th Cir. 2005), we interpreted U.S.S.G. § 2A3.2(b)(2)(B), which uses the same language and has the same application

notes as § 2G1.3(b)(2)(B).  We considered the Oxford English Dictionary definitions of the words "unduly" ("without due cause or justification; without proper regard to right and wrong; unrightfully, improperly")  and "influence"  ("to exert influence upon, to affect by influence; to affect the mind or action of"), in conjunction with the application notes, and concluded that "the court must engage in a victim-focused inquiry when applying this subsection in every case." *Chriswell*, 401 F.3d at 469.  We also noted that this approach was consistent with the background commentary to § 2A3.2, which "was added to the Guidelines in 2000 to capture those cases where 'coercion, enticement, or other forms of undue influence by the defendant . . . compromised the voluntariness of the victim's behavior and, accordingly, increased the defendant's culpability for the crime.'"  *Id.* at 463-64 (quoting U.S. SENTENCING GUIDELINES MANUAL § 2A3.2 cmt. background (2000)).  Although the *Chriswell* court differed in certain respects from previous decisions by the Seventh and Eleventh Circuits, the three courts were unanimous on the only point that is relevant here:  when there is a real child victim (as opposed to a case involving a police officer posing as a child), the applicability of the undue-influence enhancement must be determined by focusing on the victim's behavior and asking whether its voluntariness was compromised by the defendant's actions.  *See United States v. Mitchell*, 353 F.3d 552, 558 (7th Cir. 2003) (surveying various legal definitions of undue influence and concluding that each "requires an actual target of influence and contemplates a situation where the 'influencer' has succeeded in altering the behavior of the target"); *United States v. Root*, 296 F.3d 1222, 1234 (11th Cir. 2002) (noting that "the voluntariness of a real child victim's actions would be dispositive if an undercover agent were not involved"); *id.* at 1236 (Kennedy, J., concurring in part and dissenting in part) (noting that the enhancement "requires examination of the effect on the victim").

More recently, in *United States v. Myers*, 481 F.3d 1107 (8th Cir. 2007), the Eighth Circuit affirmed the district court's conclusion that the § 2G1.3(b)(2)(B) enhancement should not apply, despite the presumption of undue influence that existed because of the discrepancy in age between defendant and victim.  The court noted that Myers had put on evidence showing that the victim had "possessed some inclination to

leave home before she even encountered Myers and had contemplated running away with" another man. *Id.* at 1112. Furthermore, the victim "characterized the plan for her to run away and marry Myers as 'both of [their] ideas,' agreed that Myers 'didn't have to do anything to convince [her] to go to Kentucky,' and stated that she anticipated that she would at some point have sex with Myers." *Id.* The court affirmed the district court's conclusion that "despite the difference in their ages, Myers did nothing that compromised [the victim's] volition, however misguided it may have been." *Id.*

The *Myers* approach focuses on the victim's volition, and whether it was overborne, and accepts the possibility that a victim could have been a willing participant, even if that willingness seems misguided or grotesque to the court. This is the proper approach to take in these cases, and the one that the majority should have followed here. Indeed, it is not clear how a presumption of undue influence could be rebutted, except by showing that the victim's actions were consistently voluntary. The argument in favor of focusing on the defendant's behavior, presumably, is that when the defendant takes certain actions — for example, plying the victim with gifts or flattery, emphasizing his greater knowledge and life experience — we should infer that the victim's actions in response were not truly voluntary, even if they appear to be to outside observers, or even to the victim himself. But, at a minimum, a sentencing judge should be explicit that he is considering the defendant's actions for the purpose of drawing inferences about the voluntariness of the victim's behavior. Simply citing the defendant's actions disapprovingly does not meet the requirements of § 2G1.3(b)(2)(B) and its application notes.

Had we followed the proper approach, the outcome here would be clear. All evidence suggests that the victim initiated the relationship with Lay, called Lay frequently, deceived Lay about his home life and living situation in order to win his sympathy, was the first to suggest that Lay visit him, and planned an alibi that would let him get away to spend the weekend with Lay (with an expectation that they would have sexual relations then). The victim professed to be in love with Lay and wanted to go to California to live with him. When informed of the police investigation, the victim stated

a desire not to get Lay in trouble, thought the police should apologize to Lay, and mentioned the possibility of suicide, apparently at the prospect of Lay's arrest. This evidence indicates that the victim's volition was not compromised, and suffices to rebut the presumption that Lay unduly influenced the victim.

Traveling interstate for the purpose of engaging in sexual activity with a minor is a crime, whether the minor's involvement is consensual or not. Properly applied, though, the enhancement for undue influence sensibly distinguishes cases involving consensual conduct from those more culpable cases in which the defendant's actions compromise the voluntariness of the minor's behavior. The majority eviscerates this distinction by allowing district courts to apply the enhancement to cases like this one where all the evidence suggests that the victim's participation in the relationship was entirely voluntary.

## II. Use of a Computer

The district court increased Lay's sentence under U.S.S.G. § 2G1.3(b)(3)(B), which provides a two-point enhancement "[i]f the offense involved the use of a computer or an interactive computer service to . . . entice, encourage, offer, or solicit a person to engage in prohibited sexual conduct with the minor." As the majority concedes, this enhancement is clearly inapplicable, since its plain language requires the defendant to have used a computer to interact with "a person" other than the minor. The majority waives this away, however, as "an inconsequential citation error." But this is not a simple matter of the parties quoting the language of one provision while inadvertently citing to another. The Presentence Report, the district court, and the prosecution (at sentencing and on appeal) refer repeatedly to the language of § 2G1.3(b)(3)(B), including the direct references to "a person" other than the minor. It was a mistake, but not a typographical or inconsequential one; it was a substantive error that stems from the underlying problem in this case — the district court's disregard for the text of the enhancements it was applying.

Assuming arguendo, though, that the majority is correct — that the parties' consistent and repeated quotation of the language of § 2G1.3(b)(3)(B) was in fact just

an uncanny series of slips of the pen, rendering us free to substitute § 2G1.3(b)(3)(A) in its place — the enhancement is still inapplicable.  Section 2G1.3(b)(3)(A) provides for a two-point enhancement "[i]f the offense involved the use of a computer or an interactive computer service to . . . persuade, induce, entice, coerce, or facilitate the travel of, the minor to engage in prohibited sexual conduct."  Ignoring the final clause of this provision, the district court held that "the mere fact that the defendant used a computer to contact this 15-year-old and to communicate with [the victim] and to entice [the victim] to begin this relationship was sufficient for the offense characteristics to be applicable."  The Sentencing Commission is certainly free to create an enhancement that applies whenever a defendant uses a computer to start a relationship that subsequently becomes sexual.  But it has not done so.  The enhancement only applies when the defendant uses a computer to entice (etc.) a minor to engage in prohibited sexual conduct.  The record clearly indicates that this did not happen here.

Lay testified that his first contact with the victim occurred some time in July 2006, when he received an unsolicited invitation from the victim to chat online.  The victim's online profile said that the victim was 25 years old.  There is nothing in the record about the content of this chat session.  Soon thereafter, the victim sent Lay a series of emails, discussing quotidian events like "a picnic at a park, [and] things that . . . the victim was doing over the weekend."  Lay would usually send short responses, "two or three lines" long, saying, "'Wow, that was nice.  It must have been exciting,'" or something similar.  After communicating "off an on" like this until "mid to late August or early September,"[1] their correspondence shifted entirely to the telephone, at the victim's request.  At the outset, their phone conversations were of the same nature as their email correspondence — that is, they talked "primarily" about the victim's interest in soccer, plus "every day things" like the weather and the minor tribulations of Lay's job as a truck driver.  Lay testified that over "a period of several months," their

---

[1]The date range that Lay gave — beginning some time in July and ending between mid August and early September — permits but in no way requires the majority's conclusion that Lay and the victim corresponded online for "two months."  As I explain below, the length of the correspondence is irrelevant to the question at hand.  But the majority seems to believe otherwise, so I note in passing that its conclusions about the duration are only ambiguously supported by the record.

relationship gradually became "more of an intimate friendship," and at some point during this time Lay realized that the victim was younger than he had first believed. When asked directly whether any of the conversations that dealt with his visit to Ohio was "ever carried out by way of a computer," Lay answered "No, sir, never." None of these statements was called into question on cross-examination. Nor does the victim's statement suggest anything different, except to the extent that he said that their correspondence was conducted entirely over the phone beginning in late July, rather than August or September, as Lay recalled. Nowhere in the record is there any evidence that their online correspondence was at all sexual in nature. In other words, nothing in the record supports the conclusion that Lay used a computer to "persuade, induce, entice, coerce, or facilitate the travel of, the minor to engage in prohibited sexual conduct."

The majority offers three arguments to avoid what should be the obvious conclusion. First, it conjectures that Lay conducted the online correspondence with "the apparent intention of having prohibited sexual relations" with the minor. Where this factual allegation comes from is entirely unclear. But even if it is true, Lay's subjective intentions while corresponding with the victim are irrelevant to the question of whether Lay enticed him to engage in sexual conduct. Second, the majority says that disallowing the enhancement here would contradict the purpose of the enhancement. If we imagine that the purpose of the enhancement is to lengthen the sentence of any offender who meets his victim online, then that might be true. But the enhancement's purpose, which is best articulated by the text and application notes, is to lengthen the sentence of an offender who uses a computer to entice a minor to engage in prohibited sexual conduct, since a computer facilitates anonymous, one-to-many communication in a way that, say, a phone conversation does not. Finally, the majority distinguishes this from "a case in which a defendant and a victim, after **an innocent** encounter via computer, developed a relationship offline that evolved into an inappropriate sexual relationship." But the only distinction between that hypothetical case (in which the majority would apparently find the enhancement inapplicable) and this one is the number of innocent online correspondences that occurred before the relationship developed offline into an inappropriate sexual one. Again, this distinction bears no relation to the language of the

enhancement, and its rationale is completely unexplained. The applicability of the enhancement should turn on how the computer was used, not on the number of correspondences.

The first paragraph of the majority opinion states that "none of Lay's discussions with the minor about sexual activity occurred via computer." This fact should have been dispositive, and the enhancement for using a computer to entice a minor to engage in prohibited sexual conduct should not apply.

### III. Substantive Reasonableness

Lay's twenty-year term of supervised release will start to run when his seven-year prison sentence ends, at which time he will be 62 years old. In addition to the standard conditions of supervised release, the district court imposed a litany of special conditions, including several related to Lay's new status as a sex offender. Among other things, Lay must not: have any contact with any person under the age of 18, unless his or her parent or legal guardian is present or Lay notifies the parent or guardian about his conviction; associate or correspond with anyone who "has a sexual interest [in] or attraction to minors"; reside within direct view of schools, parks, playgrounds, youth centers, or other facilities used primarily by minors; or use any online computer service — including at work or in an educational capacity — without prior written approval. Lay also must: get prior approval for all residential and employment decisions; install monitoring software on his computers; provide the probation office with his passwords and Internet history; submit to periodic unannounced searches of his computer; and submit to warrantless searches of his person, residence, vehicle, and place of business.

These conditions will undoubtedly make it very difficult for Lay to find a job or reintegrate himself into society. Perhaps it could be said that the conditions themselves, though extremely onerous, are "reasonably related to the dual goals of probation, the rehabilitation of the defendant and the protection of the public." *United States v. Ritter*, 118 F.3d 502, 504 (6th Cir.1997). But for twenty years? A condition of supervised release must "involve[] no greater deprivation of liberty than is reasonably necessary for the purposes" of § 3553. 18 U.S.C. § 3553(d). I cannot see how it is reasonably

necessary to require a man in his sixties, seventies, and eighties, with no prior criminal history, to sacrifice so many of his liberties in the name of protecting the public. I would conclude that the twenty-year sentence of supervised release, with its long list of liberty-infringing conditions, is substantively unreasonable.

## IV. Conclusion

Lay's actions were clearly criminal, as he acknowledged. But in our rush to condemn the wrongness of his actions, we should still strive to apply the law disinterestedly, looking closely at the facts to determine whether they fit within the language of the Sentencing Guidelines. Because all relevant evidence points to the conclusion that the voluntariness of the victim's actions in this case was never compromised, and that Lay never used a computer to entice the victim to engage in prohibited sexual conduct, the two sentencing enhancements at issue should be reversed. And because Lay's twenty-year term of supervised release is greater than necessary to comply with the goals of sentencing, his sentence should be vacated as substantively unreasonable. For these reasons, I respectfully dissent.