**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 09a0830n.06

**No. 08-2012**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | **FILED** |
| Plaintiff-Appellee, | ) | **Dec 23, 2009** |
| | ) | LEONARD GREEN, Clerk |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| TYRONE L. KEYS, | ) | WESTERN DISTRICT OF MICHIGAN |
| | ) | |
| Defendant-Appellant. | ) | |

Before:  SUHRHEINRICH, SUTTON and COOK, Circuit Judges.

SUTTON, Circuit Judge.  Tyrone Keys challenges his felon-in-possession conviction and 262-month sentence.  We affirm Keys' conviction (because he pleaded guilty without reserving the right to challenge the district court's suppression ruling) and his sentence (because it was procedurally reasonable).

I.

At about 1:00 a.m. on October 2, 2006, Lansing Police Officer Nick Hughett and a civilian ride-along, John Legwin, observed Keys approach a car in a parking lot and, less than a minute later, enter the front-passenger seat of a nearby Suburban, which drove away.  Hughett followed the Suburban and stopped the car when it changed lanes several times without signaling.

Keys exited the Suburban as soon as it pulled over at a gas station and started to walk toward the station's convenience store. *See id.* at 29, 102. Hughett ordered Keys to return to the car and, when Keys did not comply, Hughett approached Keys, grabbed him by the arm and began to escort him toward the Suburban. Keys resisted and reached toward his waist, where Hughett saw a .45 caliber handgun tucked into Keys' waistband. When Hughett tried to restrain Keys, Keys fought back. During the struggle, the gun fell from Keys' waistband to the ground, and Keys continued reaching for it until Legwin stepped out of the cruiser and picked it up. Hughett eventually gained control of Keys, and additional officers soon arrived on the scene to bring an end to the confrontation. Injuries sustained by Hughett and Keys in the fight required both of them to get medical treatment.

A grand jury indicted Keys for violating the federal felon-in-possession statute. Keys pleaded not guilty and moved unsuccessfully to suppress the gun. Without entering into a plea agreement or filing a conditional plea, Keys eventually pleaded guilty to a materially identical criminal information.

At the sentencing hearing, the court rejected (1) Keys' challenge to the presentence report's recommended enhancement for possessing a firearm in connection with another felony (assaulting Hughett) and (2) his request for an acceptance-of-responsibility reduction. The district court postponed sentencing Keys, however, because questions remained about whether Keys' three prior felony convictions triggered an armed-career-criminal enhancement. *See* 18 U.S.C. § 924(e);

U.S.S.G. § 4B1.4. Two months later, the district court deemed Keys an armed career criminal and sentenced him to 262 months—the bottom of the guidelines range.

## II.

### A.

Keys challenges the district court's denial of his motion to suppress the gun as the fruit of an unlawful seizure. *See* U.S. Const. amend. IV. He cannot attack that ruling here, however, because he pleaded guilty without entering a written conditional plea preserving his right to appeal the issue. *See United States v. Herrera*, 265 F.3d 349, 351 (6th Cir. 2001); Fed. R. Crim. P. 11(a)(2). Keys asks us to overlook that waiver, but he forfeited that request by not raising it until his reply brief. *See Moulton v. U.S. Steel Corp.*, 581 F.3d 344, 354 (6th Cir. 2009).

### B.

Through a supplemental *pro se* brief, Keys attacks his conviction on ineffective-assistance grounds. *See* U.S. Const. amend. VI. That challenge is premature. We generally require federal inmates to wait until they file a § 2255 claim before they may attack the performance of their trial counsel—first and foremost because a separate collateral proceeding allows the inmate to develop any factual record that might support his claim. *See United States v. Franco*, 484 F.3d 347, 354–55 (6th Cir. 2007). We stand by that common practice here.

III.

Keys separately challenges the procedural reasonableness of his sentence, arguing that the district court miscalculated his guidelines range. *See Gall v. United States*, 552 U.S. 38, 51 (2007) (noting that "failing to calculate (or improperly calculating) the Guidelines range" constitutes "significant procedural error"). We give abuse-of-discretion review to the procedural reasonableness of the district court's sentence, fresh review to its interpretation of the guidelines and clear-error review to its factual findings. *See id.* at 51; *United States v. Lay*, 583 F.3d 436, 449 (6th Cir. 2009).

A.

Keys says that the district court improperly denied his request for a reduction based on acceptance of responsibility. Under the guidelines, defendants who "clearly demonstrate[] acceptance of responsibility for [their] offense" receive a two-level sentencing reduction, and as a general matter pre-trial guilty pleas often establish the requisite acceptance. U.S.S.G. § 3E1.1 & cmt. n.3. Defendants do not have to "affirmatively admit[] relevant conduct beyond the offense of conviction in order to obtain a reduction." *Id.* § 3E1.1 cmt. n.1(a). Silence or good-faith denials will do. But when a defendant "falsely denies . . . relevant conduct that the court determines to be true," the denial casts a dark cloud over the request. *See id.* § 3E1.1 cmt. n.1(a); *Lay*, 583 F.3d at 448–49.

From the outset, Keys has admitted that he violated the felon-in-possession statute. But from the outset he also has denied one feature of his relevant conduct—that he reached for his gun or tried to use it in some way during the altercation. These denials contradict findings by the district court

at the suppression hearing and at Keys' initial sentencing hearing. *See* Suppression Hr'g Tr. at 102–03 ("When [Keys] got toward the vehicle again, he reached into his waistband . . . [and] a .45 caliber semiautomatic pistol was observed by the officer in [Key's] waistband."); R.88 at 11 (finding that Keys tried to "get a hold of that firearm to assault, if not to shoot," Hughett). In denying the acceptance-of-responsibility reduction after hearing the competing evidence, the court explained that Keys had not told "the truth about what happened at [his] confrontation" with Hughett. R.88 at 11; R.89 at 41, 43.

This finding was not clear error, and it gave the court ample reason for denying the reduction. Keys repeatedly denied the conduct, and the district court plausibly explained why it did not accept his account. Without the opportunity to observe Keys' demeanor and with only a transcript that sets forth competing accounts of the confrontation, we are in no position to second-guess the district court's ring-side accounting of what happened—namely, that Keys was lying about the encounter rather than somehow mistakenly thinking that he did not reach for his gun. *See Lay*, 583 F.3d at 449.

Keys' attempt to brandish his gun "to assault, if not to shoot," Hughett with it also properly qualifies as relevant conduct. R.88 at 11. All "acts and omissions," the guidelines say, qualify as relevant conduct if they were "committed . . . during the commission of the offense of conviction . . . or in the course of attempting to avoid detection or responsibility for that offense." U.S.S.G. § 1B1.3(a) & cmt. background. Keys' conduct fits within this definition. Criminals often brandish weapons to facilitate escape—the ultimate way of avoiding detection or responsibility for criminal behavior. And that conduct affects whether Keys qualifies for an enhancement for being a felon in

possession who used a gun "in connection with another felony offense"—felony assault of a police officer. *Id.* § 2K2.1(b)(6); *see also* Mich. Comp. Laws § 750.81d.

Not so, Keys protests, because he sufficiently accepted responsibility for his offense by pleading guilty and truthfully admitting he was a felon in possession. But a guilty plea, as explained, does not automatically entitle a defendant to an acceptance-of-responsibility reduction, *see United States v. Mahaffey*, 53 F.3d 128, 134 (6th Cir. 1995), and the district court acted within its discretion in finding that Keys' untruthful denial of his related serious conduct outweighed his confession.

The cases upon which Keys relies confront a distinct question: what types of *post-offense conduct* may courts consider in assessing whether a defendant has voluntarily terminated or withdrawn from criminal conduct or associations? *See* U.S.S.G. § 3E1.1 cmt. n.1(b); *United States v. Banks*, 252 F.3d 801, 806 (6th Cir. 2001); *United States v. Tilford*, 224 F.3d 865, 868 (6th Cir. 2000); *United States v. Morrison*, 983 F.2d 730, 734–35 (6th Cir. 1993). Today's case deals with denials of relevant conduct, and the relevant precedent on that point consistently affirms denials of acceptance-of-responsibility reductions when the defendant falsely denies the conduct. *See, e.g.*, *Lay*, 583 F.3d at 448–49; *United States v. Maye*, 582 F.3d 622, 625–26 (6th Cir. 2009).

No better is Keys' contention that district courts may consider false denials of relevant conduct only if they occur *after* the court makes its factual findings. The guidelines draw no such distinction, as they focus on "relevant conduct that the court *determines* to be true," not conduct the

court previously determined to be true. U.S.S.G. § 3E1.1 cmt. n.1(a) (emphasis added). Nor does this theory conform with traditional sentencing practices, in which courts often make findings of fact about relevant conduct moments before announcing a defendant's sentence. Nor does the theory respect § 3E1.1's focus on sincere and voluntary acceptances of responsibility. It is difficult to maintain that a defendant who falsely denies the true extent of his offense up until a district court finds otherwise has sincerely accepted responsibility for his behavior. *Cf. id.* § 3E1.1 cmt. n.2 (noting that defendants who admit guilt and express remorse only after conviction by a trial rarely qualify for a reduction).

Worse still, the argument fails on its own terms. Keys continued to deny reaching for the gun when a probation officer interviewed him *after* the district court had found that he had done so. And he repeated the denial after the court reiterated its finding at his initial sentencing hearing. The court did not misread this guideline or abuse its discretion in applying it.

## B.

Keys separately challenges the court's four-level enhancement for illegally possessing a firearm in connection with another felony. *See* U.S.S.G. § 2K2.1(b)(6). The felony assault of Hughett, according to Keys, was not sufficiently distinct from the felon-in-possession conviction—in time or conduct—to qualify as "another felony." *See United States v. Sanders*, 162 F.3d 396, 400 (6th Cir. 1998). But this error, if error it was, made no difference to Keys' sentence. The district court calculated the guidelines range based solely on Keys' status as an armed career criminal. *See*

R.89 at 34, 49–54. And even if Keys were to prevail on his § 2K2.1 argument, that would not undermine our conclusion that the district court properly refused to grant him an acceptance-of-responsibility reduction; the fortuity that he falsely denied conduct that did not ultimately enhance his sentence under § 2K2.1 would not diminish Keys' unwillingness to accept responsibility for his actions. *See United States v. Winters*, 247 F. App'x 665, 669 (6th Cir. 2007). Because it would not affect his sentence, any error by the court in finding that Keys qualified for a § 2K2.1 enhancement is at most harmless, which is another word for irrelevant. *See United States v. Ward*, 506 F.3d 468, 476 (6th Cir. 2007).

IV.

For these reasons, we affirm Keys' conviction and sentence.