**NOT RECOMMENDED FOR PUBLICATION**
File Name: 17a0247n.06

**No. 16-3838**

<table>
<tr><td>UNITED STATES COURT OF APPEALS<br>FOR THE SIXTH CIRCUIT</td><td>**FILED**<br>May 01, 2017<br>DEBORAH S. HUNT, Clerk</td></tr>
</table>

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE NORTHERN |
| DAVID K. TURNER, | ) | DISTRICT OF OHIO |
| | ) | |
| Defendant-Appellant. | ) | OPINION |
| | ) | |
| | ) | |

BEFORE:    SUHRHEINRICH, WHITE, and STRANCH, Circuit Judges.

**JANE B. STRANCH, Circuit Judge.**  David Turner pled guilty to four counts related to sexual activity with a minor and was sentenced to 238 months' imprisonment.  Turner now challenges his sentence, arguing that the district court improperly applied two sentencing enhancements, miscalculated his sentencing range under the Sentencing Guidelines, and failed to appropriately consider his background and the circumstances of the conduct at issue.  Because the district court provided an inadequate explanation for applying a sentencing enhancement, we **VACATE** Turner's sentence and **REMAND** for resentencing.

**I.    BACKGROUND**

In early 2015, David Turner met N.M., a fourteen-year-old girl living in Massillon, Ohio, through Facebook.  At the time, Turner was 24 years old and living in Nashville, Tennessee, where he was homeless and unemployed.  The two began exchanging messages and developed a

romantic relationship over the next six months. During the course of this online relationship, N.M. confided to Turner that she had been sexually abused by a relative a few years prior, and discussed other feelings of depression. Many of these conversations revolved around sex. Turner and N.M. discussed having sex with each other, having threesomes with other women, and exchanged nude images of themselves. Turner then sent the nude images of N.M. to other women. At the time of this conduct, Turner was aware that N.M. was 14 years old. Though Turner initially told N.M. that he was 17, she later learned his true age

During this time, Turner was involved in several other online relationships where he exchanged sexual messages with women. In many of these messages, he discussed his relationship with N.M., his plans to travel to Ohio, and potential sexual contact between N.M. and other women. (*Id.*) N.M. herself was also apparently in contact with at least one of these women, Erian, and exchanged explicit text messages with her.

Turner and N.M. eventually devised a plan to meet in Ohio and travel to Columbus, Ohio, together. On July 9, 2015, Turner traveled from Tennessee to Ohio to meet N.M. and picked her up while she was walking with her younger brother. Her brother told their mother, and later officers from the Massillon Police Department, that N.M. was carrying a small suitcase and had been planning to run away for about ten days. N.M.'s mother also told police that she had discovered that her daughter had been sending Turner money via Western Union. Massillon police contacted other law enforcement agencies and issued bulletins about Turner and N.M. throughout Ohio and Tennessee.

After leaving Massillon, Turner and N.M. spent the night together in a hotel near Canton, Ohio, where they engaged in several sexual acts. Turner recorded a portion of their encounter on his cell phone and sent the video to Erian, the adult female with whom he had previously

discussed sex and sexual acts involving N.M.  The next morning, Turner and N.M. left the hotel for the bus station, intending to travel to Columbus.  They were apprehended by police at a McDonald's near the station, and Turner was arrested.

Turner was charged with four counts: (1) sexual exploitation of a minor by production of sexually explicit conduct, in violation of 18 U.S.C. § 2251(a); (2) coercion and enticement of a minor to engage in sexual activity, in violation of 18 U.S.C. § 2422(b); (3) travel with intent to engage in illicit sexual conduct, in violation of 18 U.S.C. § 2423(b); and (4) distributing a visual depiction of a real minor engaged in sexually explicit conduct, in violation of 18 U.S.C. § 2522(a)(2).  Turner pleaded guilty to all four counts with no plea agreement.

At sentencing, Turner's attorney highlighted the abuse and neglect Turner suffered as a child, which had resulted in emotional and mental-health issues that continue to affect his life today.  He argued that trauma experienced in Turner's tumultuous home life created feelings of abandonment and worthlessness, as well as difficulty in social situations or relationships with others.  Turner was prescribed psychotropic drugs for his mental-health issues at a young age, and attempted self-medication through drugs and alcohol.  His attorney argued that these mental-health issues caused Turner to have the "emotional" age of a fourteen or fifteen-year-old, which made him see N.M. as a peer.

The district court calculated Turner's total offense level to be 40, reduced to 37 based on Turner's acceptance of responsibility and a timely guilty plea.  The court overruled Turner's objections to the Guidelines calculation.  Based on a total offense level of 37 and a Category I criminal history, the district court calculated the sentencing range under the Guidelines to be 210 to 262 months.  Turner's conviction for Count I carried a statutory mandatory minimum

sentence of 15 years. *See* 18 U.S.C. § 2251(a), (e). The district court sentenced him to 238 months of imprisonment on Counts 1, 3, and 4, and 120 months on Count 2, to run concurrently.

Turner now appeals his sentence, arguing that the district court erred in applying sentencing enhancements for undue influence, under USSG § 2G1.3(b)(2)(B), and using a computer for the purpose of producing sexually explicit material, under USSG § 2G2.1(b)(6)(B). He also argues that his sentence is procedurally and substantively unreasonable.

## II.     ANALYSIS

### A.     Standard of Review

We review the reasonableness of a district court's sentence for an abuse of discretion. *Gall v. United States*, 552 U.S. 38, 51 (2007). This deferential standard involves examining both the procedural and substantive reasonableness of a sentence. *United States v. Erpenbeck*, 532 F.3d 423, 430 (6th Cir. 2008). A sentence is procedurally unreasonable when the district court has committed a "significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence." *Gall*, 552 U.S. at 51. "Assuming that the district court's sentencing decision is procedurally sound," we then consider the substantive reasonableness of a district court's sentencing decision. *Id.* Our focus in a substantive reasonableness inquiry is whether, based on a totality of the circumstances, "the length of the sentence is 'greater than necessary' to achieve the sentencing goals set forth in 18 U.S.C. § 3553(a)." *United States v. Tristan-Madrigal*, 601 F.3d 629, 632-33 (6th Cir. 2010).

### B.     Sentencing Enhancements

Turner challenges the procedural reasonableness of his sentence based on the district court's application of two sentencing enhancements: (1) a two-level enhancement for undue

influence, and (2) a two-level enhancement for use of a computer to solicit participation with a minor in sexually explicit conduct. "We review *de novo* a district court's application of the Sentencing Guidelines when that application involves mixed questions of law and fact. . . . [and w]e review for clear error a district court's finding of fact in connection with sentencing." *United States v. Stafford*, 721 F.3d 380, 400 (6th Cir. 2013) (quoting *United States v. Hayes*, 135 F.3d 435, 437 (6th Cir. 1998)).

1.     Undue Influence

Under USSG § 2G1.3(b)(2)(B), two levels are added to the defendant's base offense level if "a participant . . . unduly influenced a minor to engage in prohibited sexual conduct." Where the participant is at least ten years older than the minor, there is a rebuttable presumption of undue influence. *See id.*, cmt. 3(B); *see also United States v. Wise*, 278 F. App'x 552, 563 (6th Cir. 2008). The Guidelines Commentary on the application of this enhancement indicates that "the court should closely consider the facts of the case to determine whether a participant's influence over the minor compromised the voluntariness of the minor's behavior," and that "[t]he voluntariness of the minor's behavior may be compromised without prohibited sexual conduct occurring." USSG § 2G1.3(b)(2)(B), cmt. 3(B). It is necessary that the record contain "[s]ome evidence that the minor was in fact influenced," which may include evidence that the victim's "particular troubled characteristics gave [defendant] a vulnerable victim to influence with his manipulative tactics." *United States v. Lay*, 583 F.3d 436, 446 (6th Cir. 2009). Here, the district court determined that the rebuttable presumption was not overcome.

Turner makes several arguments to contest the rebuttable presumption. First, he argues that the record does not show that N.M.'s behavior was "anything other than voluntary." He also states that his lack of resources and history of mental-health issues made him unable to influence her and that he is "emotionally younger than his chronological age," which made him see N.M.

-5-

as a peer rather than as a minor. Finally, as he noted at his sentencing hearing, N.M. turned 15 a few days after he was arrested, making the age difference 9 years instead of 10 at that point.

The record shows that Turner found N.M. on Facebook, friended her, and began an online relationship with her that culminated in his journey to Ohio. During these communications, N.M. told him about her history of sexual abuse and feelings of depression. (*Id.*) N.M. also sent Turner nude images of herself, which he then shared with an adult woman in the hope of eventually engaging in a threesome. Turner argues that he could not have influenced N.M. because he was homeless and unemployed, and did not send N.M. money or gifts that might have lured her into engaging with him. The record shows that Turner "figured out a way to come get her" in which N.M. sent Turner money, including for his travel to Ohio. N.M. also voluntarily left Massillon with Turner, after planning and packing for the trip, and traveled to Canton where she engaged in sexual contact that she later told police was consensual.

The fact that N.M. agreed to the relationship does "not prove that [N.M.] was not unduly influenced." *Lay*, 583 F.3d at 446. In the context of Turner's conversations with N.M., and in light of his knowledge of her vulnerability, N.M's actions could well be read as a result of manipulation by an older man who sought to make a connection with a young girl for sexual purposes. In fact, the Presentence Investigation Report (PSR) quotes from an assessment describing N.M. as "quite emotionally vulnerable" and susceptible to manipulation as a result of attention from Turner, whom she perceived as a "savior." The evidence in the record is sufficient to show manipulation that influenced a minor with "particular troubled characteristics" that made her vulnerable. *Lay*, 583 F.3d at 446. The district court properly applied the sentencing enhancement for undue influence of a minor.

Turner's history of mental-health issues and his perception that he is "emotionally younger" than his 24 years of age do not alter our determination. The key to our inquiry into the rebuttable presumption is the effect or influence that Turner had on N.M., and we find the record clear in this regard. Nor do we find availing Turner's argument that the age difference "just barely allows" for the rebuttable presumption. The fact that the age difference reduced to nine years soon after Turner was arrested does not rebut the presumption of undue influence, especially in light of the record evidence supporting the enhancement even apart from the presumption.

### 2.    Use of a Computer

Turner also challenges the application of a second sentencing enhancement relating to his use of a computer in connection with his charged offenses. To decide whether use of this enhancement was appropriate, however, we must first determine which enhancement the district court actually applied at sentencing. The record reveals confusion on this matter.

Paragraph 54 of the PSR stated that "[t]he criminal investigation and relevant conduct social media evidence revealed that the defendant sent the video [of himself and N.M. engaged in sexual acts] to a third party to solicit future sexual activity with the minor victim," and added two levels pursuant to USSG § 2G2.**2**(b)(6)(ii). But as Turner points out, § 2G2.**2**(b)(6) does not contain a subsection (ii). Prior to sentencing, Turner objected to the enhancement in the PSR, surmising from the language in the PSR that the probation officer actually meant to apply USSG § 2G2.1(b)(6)(B)(ii).

Further confusing the matter, the district court referred only to USSG § 2G1.3(b)(3)(A) when it overruled Turner's objection to the enhancement at the sentencing hearing. Section 2G1.3(b)(3) applies when the offense involves the use of a computer to "persuade, induce, entice, coerce, or facilitate the travel of [a] minor to engage in prohibited sexual conduct." This

enhancement was applied to other counts, but as Turner notes in his appellate brief, he did not challenge the use of § 2G1.3(b)(3). The district court then stated that Turner's two other objections were moot as a result of grouping the counts. When Turner then reiterated his objection to ¶54 of the PSR—which referred to the non-existent § 2G2.2(b)(6)(ii)—the district court stated that it had "overruled that objection" but did not clarify which guideline it was in fact applying in granting the enhancement. Nor does the Government shed light on the appropriate enhancement. Its appellate brief cites only to *Lay*, a case in which we evaluated the applicability of § 2G1.3(b)(3), the enhancement to which Turner had not objected.

We are thus in the position of having to decipher which sentencing enhancement the PSR attempted to apply when it cited to the non-existent USSG § 2G2.2(b)(6)(ii). Our review of the Guidelines suggests three plausible options, all of which refer to a defendant's use of a computer and sexual exploitation of a minor: (1) § 2G2.2(b)(6); (2) § 2G2.1(b)(6)(B)(i); or (3) § 2G2.1(b)(6)(B)(ii). Turner argues for number (3) as the most likely choice based on the language used in the PSR.

The first of these options, § 2G2.2(b)(6), adds two levels when "the offense involved the use of a computer or interactive computer service for the possession, transmission, receipt, or distribution of the material, or for accessing with intent to view the material." Similarly, § 2G2.1(b)(6)(B)(i) adds two levels when, "for the purpose of producing sexually explicit material[,] . . . the offense involved . . . the use of a computer or an interactive computer service to (i) persuade, induce, entice, coerce, or facilitate the travel of, a minor to engage in sexually explicit conduct, or to otherwise solicit participation by a minor in such conduct." Finally, § 2G2.1(b)(6)(B)(ii) adds two levels when, "for the purpose of producing sexually explicit material[,] . . . the offense involved . . . the use of a computer or an interactive computer service .

. . to (ii) solicit participation with a minor in sexually explicit conduct." Turner contends that the PSR must refer to subsection (ii) because the probation department's description of the enhancement—that Turner "sent the video to a third party to solicit future sexual activity with the minor victim"—mirrors language used in this subsection. But this is far from clear.

Though these three enhancements include interrelated characteristics, they have distinct requirements and evaluate different conduct. They are not interchangeable. Following Turner's objection to the enhancement in ¶54 of the PSR, the district court should have identified the appropriate enhancement and explained how Turner's conduct met its requirements. Because the district court provided an inadequate explanation for the enhancement, we are unable to determine whether it was properly applied, and must remand for resentencing. *See Gall*, 552 U.S. at 51 (stating that incorrect calculation of a defendant's Guidelines range is procedural error warranting a remand for resentencing). Accordingly, we need not discuss whether Turner's sentence was substantively unreasonable. *Id.* (explaining that the appellate court considers the substantive reasonableness of a sentence only after determining that "the district court's sentencing decision is procedurally sound").

### III.    CONCLUSION

For the reasons explained above, we VACATE Turner's sentence and REMAND for resentencing.