**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 18a0593n.06

No. 17-4061

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Nov 28, 2018
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| **Plaintiff-Appellee,** | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE NORTHERN |
| | ) | DISTRICT OF OHIO |
| DAVID TURNER, | ) | |
| | ) | **OPINION** |
| **Defendant-Appellant.** | ) | |
| | ) | |

Before: MOORE, CLAY, and DONALD, Circuit Judges.

**KAREN NELSON MOORE, Circuit Judge.** This sentencing case is making a second appearance before this court. A separate panel previously vacated and remanded Defendant David Turner's case back to the district court for resentencing and directed the district court to identify an appropriate sentencing enhancement and explain how Turner's conduct met the enhancement's requirements. *United States v. Turner*, 687 F. App'x 520, 525–26 (6th Cir. 2017) (*Turner I*). The district court did so and imposed the same sentence. For the reasons that follow, we **AFFIRM**.

**I. BACKGROUND**

The *Turner I* panel outlined the underlying facts in this case, so we will not recount them in great depth here. In brief, Turner and a minor, N.M., had communicated over Facebook and many of their online messages revolved around sex. *Turner I*, 687 F. App'x at 521. The two also exchanged nude images of each other, and Turner sent the images of N.M. to other women. *Id.* At the time, Turner was twenty-four years old and living in Nashville, Tennessee, and N.M. was

fourteen and living in Ohio. *Id.* Eventually, Turner traveled from Tennessee to Ohio, picked up N.M., and then the two spent the night together at an Ohio motel. *Id.* at 522. Turner had sex with N.M. and recorded a portion of the encounter on his cell phone. *Id.* The same night, Turner sent the video to an adult female in Wyoming named Erian, apparently to further his plans for Turner, N.M., and Erian to be in a sexual relationship together. *Id.*; R. 60 (Resentencing Tr. at 11) (Page ID #497). Turner was arrested the next day. *Turner I*, 687 F. App'x at 522.

Turner pleaded guilty, with no plea agreement, to four criminal charges: (1) sexual exploitation of a minor by production of sexually explicit conduct, 18 U.S.C. § 2251(a); (2) coercion and enticement of a minor to engage in sexual activity, 18 U.S.C. § 2422(b); (3) travel with intent to engage in illicit sexual conduct, 18 U.S.C. § 2423(b); and (4) distributing a visual depiction of a real minor engaged in sexually explicit conduct, 18 U.S.C. § 2252(a)(2). *See* R. 1 (Indictment) (Page ID #1–6); R. 10 (Guilty Plea) (Page ID #32–33).

The district court determined the Guidelines range to be 210 to 262 months. *Turner I*, 687 F. App'x at 522. Count I carried a mandatory minimum term of fifteen years. *See* 18 U.S.C. § 2251(e). Ultimately, the district court sentenced Turner to 238 months of imprisonment. *Turner I*, 687 F. App'x at 522.

As relevant here, Turner objected to the district court's application of a "use of a computer" two-level enhancement, and Turner also argued that his sentence was procedurally and substantively unreasonable. *Id.* at 522–23. But as the previous panel recognized, it was difficult to decipher which sentencing enhancement the district court actually applied. *Id.* at 525 (noting that there were "three plausible options, all of which refer to a defendant's use of a computer and

sexual exploitation of a minor," but that "they have distinct requirements and evaluate different conduct."). Consequently, the panel concluded that the district court provided an inadequate explanation for the use of a computer enhancement, vacated the sentence, and remanded the case back to the district court for resentencing. *Id.* at 525–26. The panel, therefore, did not need to reach the procedural and substantive reasonableness issues at that time.

At resentencing, the district court clarified that it relied specifically on U.S.S.G. § 2G2.1(b)(6)(B)(ii) for Turner's two-level enhancement for use of a computer. R. 60 (Resentencing Tr. at 4) (Page ID #490). That provision reads, in relevant part, "If, for the purpose of producing sexually explicit material . . . , the offense involved . . . the use of a computer or an interactive computer service to . . . solicit participation with a minor in sexually explicit conduct, increase by 2 levels." U.S. SENTENCING GUIDELINES MANUAL ("U.S.S.G.") § 2G2.1(b)(6)(B)(ii) (U.S. SENTENCING COMM'N 2015). The district court reasoned that, "Mr. Turner used his cell phone and Facebook to lure the minor victim to run away and have sex with him, and ultimately videotaped both of them having sex. . . . So the two-level enhancement applies." R. 60 (Resentencing Tr. at 4) (Page ID #490). The district court further stated that:

> The computer was used to help Mr. Turner commit the offense and commit the harm connected with the offense . . . . [I]t was also used to videotape Mr. Turner and the victim. So that clearly was used in the production. That finding was used in the production, the actual production of the video. It contained the child pornography. So it was used both to lure the victim and to produce the child pornography explicitly.

*Id.* at 5–6 (Page ID #491–92). When the district court concluded that it would impose the same sentence as before (238 months of imprisonment), it reiterated that Turner used a computer both to lure the minor and "to produce the child pornography because [Turner] videotaped [himself]

and the victim having sex, and then [Turner] further used that cell phone computer to distribute that film to another person with the object of having more sexual activity with the victim." *Id.* at 16 (Page ID #502).

Turner objected to the applicability of the enhancement. *Id.* at 4–5 (Page ID #490–91). Moreover, the defense attorney argued for a 180-month sentence, stressing Turner's tumultuous and traumatic childhood that continues to affect him. *Id.* at 7–10 (Page ID #493–96). In particular, Turner suffers from emotional and mental health issues, and his attorney explained that, even though Turner is twenty-seven years old, "mentally and emotionally, he's a 14-year-old kid." *Id.* at 9 (Page ID #495).

The district court noted that these arguments were largely the same as those presented at the initial sentencing hearing. *Id.* at 14–15 (Page ID #500–01). The judge also reiterated that he "was very mindful of the horrific upbringing [Turner] had, and it had to have contributed to what [Turner] did in this case. No human could be unaffected by that kind of upbringing." *Id.* at 15 (Page ID #501). But the district court still balanced all the considerations in the same manner as before and imposed the same sentence of 238 months of imprisonment:

> I still have to, at the end of the day, protect the community and impose a sufficient punishment. And I determined that, balancing everything, that the 238 months was appropriate. It was the 240, and then I gave you . . . two months credit for state time, for which you otherwise would not get credit. So I ended up with 238, and that's what I'm going to do again.

*Id.* Thus, the district court essentially adopted the same reasoning as it had before, *see* R. 43 (First Sent'g Tr. at 19–21) (Page ID #384–86), with the important modification of identifying and

applying the specific enhancement for use of a computer on which it relied to reach the 210 to 262 months Guidelines range.

On this appeal, Turner argues that the district court incorrectly applied the U.S.S.G. § 2G2.1(b)(6)(B)(ii) enhancement and that his sentence is procedurally and substantively unreasonable.

## II. APPLICABILITY OF THE SENTENCING ENHANCEMENT

### A. Standard of Review

In sentencing appeals, we generally review a district court's factual findings for clear error and its conclusions of law de novo. *United States v. Taylor*, 648 F.3d 417, 431 (6th Cir. 2011) (citing *United States v. Davis*, 372 F. App'x 628, 629 (6th Cir. 2010)). Whether the facts found by the district court satisfy a sentencing enhancement's requirements is a mixed question of law and fact, which we also review de novo. *United States v. Roberts*, 243 F.3d 235, 237 (6th Cir. 2001).

### B. Enhancement for Use of a Computer under U.S.S.G. § 2G2.1(b)(6)(B)(ii)

The district court correctly applied the two-level enhancement for use of a computer under U.S.S.G. § 2G2.1(b)(6)(B)(ii). Based on the record, Turner's arguments to the contrary are not persuasive.

As an initial matter, we assume, because Turner does not dispute these points, that Turner's cell phone is a "computer" as defined by 18 U.S.C. § 1030(e)(1),[1] and similarly that Facebook is

---

[1] The Sentencing Guidelines incorporate the definition of "computer" from 18 U.S.C. § 1030(e)(1). *See* U.S.S.G. § 2G2.1 cmt. n.1. That statute, in turn, defines "computer" as "an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical, arithmetic, or storage functions . . .

an "interactive computer service" as defined by 47 U.S.C. § 230(f)(2).[2] *See Pulte Homes, Inc. v. Laborers' Int'l Union of N. Am.*, 648 F.3d 295, 301 (6th Cir. 2011). Instead, Turner's argument centers on (1) the fact that "Turner's text message of the video to another adult was not a communication to another minor or to a person who exercised custody, care or supervisory control over the minor," Appellant Br. at 9; and (2) the lack of evidence of his purpose to produce sexually explicit material, *id.* at 10–11; *see also id.* at 10 ("The mere fact that a computer was used to entice a minor victim and a computer was later used to videotape a sexual encounter . . . does not automatically support the application of U.S.S.G. § 2G2.1(b)(6)(B)(ii). The plain language of this Guidelines provision requires the Court to find that the solicitation of the minor was 'for the purpose of producing sexually explicit material.'").

The enhancement here requires "the use of a computer or an interactive computer service to communicate directly with a minor." U.S.S.G. § 2G2.1 cmt. n.4 (now note 6 in the current Guidelines, but the language is unchanged from the 2015 version in effect when Turner was first sentenced). This provision does not require that the sexually explicit material itself be directly sent to the minor, as Turner suggests. It is undisputed that Turner communicated directly with N.M. over the internet to "solicit [her] participation . . . in sexually explicit conduct." U.S.S.G. § 2G2.1(b)(6)(B)(ii); *see also* R. 43 (First Sent'g Tr. at 11–12) (Page ID #376–77). This leads to

---

but such term does not include an automated typewriter or typesetter, a portable hand held calculator, or other similar device[.]"

[2]The Guidelines incorporate the definition of "interactive computer service" from 47 U.S.C. § 230(f)(2), *see* U.S.S.G. § 2G2.1 cmt. n.1, which defines the term as, "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server, including specifically a service or system that provides access to the Internet and such systems operated or services offered by libraries or educational institutions."

the real issue, as well as Turner's second argument—whether Turner's communication directly with the minor was "for the purpose of producing sexually explicit material or for the purpose of transmitting such material live." U.S.S.G. § 2G2.1(b)(6).

A preponderance of the evidence suggests that Turner had such a purpose. First, the presentence investigation report for both sentencings stated:

> [I]nvestigation revealed that the victim had sent nude images of herself to the defendant and the defendant had also sent her nude images of himself. According to the victim, the defendant told her that he sent her nude images to another female with whom they were planning to have a threesome. The victim's mother informed law enforcement personnel that the victim confided in her that the defendant took a video with his phone of himself and the minor engaged in sexual activity.

R. 21 (PSR at ¶ 18) (Page ID #207); R. 52 (Revised PSR at ¶ 24) (Page ID #430). Turner did not object to this particular paragraph in the PSR. True, Turner's ultimate plan was to engage in sexual activity with N.M. and to have a threesome sexual relationship with N.M. and Erian. But the totality of Turner's conduct also points to a purpose of producing sexually explicit material. In particular: Turner and N.M. exchanged nude pictures of themselves; Turner then sent N.M.'s pictures to Erian; Turner texted Erian on June 27, 2015, "I will let you talk to her as soon as I get to Ohio and get her"; and then again on June 28, "Are you gonna like watching me [have sex with N.M.]?" R. 52 (Revised PSR at ¶ 25) (Page ID #430–31). Notably, Turner's phone also contained sexually explicit images of Erian, which Turner appears to have solicited from Erian. *Id.* at 8–9 (Page ID #431–32). On July 9, 2015, Turner and N.M. met and Turner videotaped the two engaging in sexual activity. *Id.* at ¶¶ 35–36 (Page ID #432). The same night, Turner sent the video to Erian, along with the following text message: "Hey baby I sent you a video . . . . We thought you might [like it]. Did it make you horny?" *Id.* These facts show that, prior to making the video,

Turner had already exchanged sexually explicit material with Erian and that Turner planned to contact Erian again once he and N.M. met in Ohio. Turner's conduct leading up to July 9, as well as his message to Erian after sending the video, could lead a court to conclude by a preponderance of the evidence that Turner communicated with N.M. for the purpose of producing sexually explicit material. The district court, therefore, properly added the two-level enhancement under this provision.

Though precedent addressing, in detail, the specific "purpose prong" of this sentencing enhancement is sparse, our analysis of the provision in this case is consistent with our sister Circuits. *See, e.g.*, *United States v. Zagorski*, 807 F.3d 291, 293–94 (D.C. Cir. 2015) (concluding that the district court properly applied § 2G2.1(b)(6)(B) when a defendant sent sexually explicit material of a minor to another person and also solicited that person to engage in sexual activity with a minor); *United States v. Roman-Portalatin*, 476 F. App'x 868, 869–70 (1st Cir. 2012) (Souter, J.) (concluding that, as an alternate enhancement, § 2G2.1(b)(6)(B) could have been applied when the defendant used a computer to induce a minor to have sex with him and to send the defendant explicit photos of herself).[3] Likewise, here, Turner used a computer to induce N.M. both to have sex with him and to send Turner sexually explicit material of herself; Turner then sent

---

[3]For an example of how this court analyzed a prior, differently worded, version of this enhancement for use of a computer, see *United States v. Brown*, 237 F.3d 625, 628–29 (6th Cir. 2001) ("In using the computer to desensitize his victims to deviant sexual activity, [the defendant] was using it to solicit participation in that activity."). As we explained in *Brown*, Congress had a particular concern in mind when it directed the Sentencing Commission to add the enhancement for use of a computer: "that pedophiles may use a child's fascination with computer technology as a lure to drag children into sexual relationships." *Id.* at 629 (quoting H.R. Rep. No. 104-90, at 4 (1995)). The prior version of this enhancement read, "If a computer was used to solicit participation by or with a minor in sexually explicit conduct for the purpose of producing sexually explicit material, increase by 2 levels." U.S.S.G. § 2G2.1(b)(3) (1998). In this case, Turner's conduct falls well within the current § 2G2.1(b)(6) provision and the concerns originally contemplated by Congress.

those pictures to Erian and solicited Erian to engage in sexual activity with him and N.M. R. 52 (Revised PSR at 7–9, 12) (Page ID #430–32, 435). Although the district court could have been clearer in its specific application of § 2G2.1(b)(6)(B)'s requirements, we conclude that Turner's conduct meets the requirements here.

Next, we turn to Turner's second challenge, that his sentence is procedurally and substantively unreasonable.

### III. PROCEDURAL AND SUBSTANTIVE REASONABLENESS

#### A. Standard of Review

"We review challenges to the reasonableness of a sentence for abuse of discretion." *United States v. Kamper*, 748 F.3d 728, 739 (6th Cir. 2014); *see also Gall v. United States*, 552 U.S. 38, 51 (2007). We "must first ensure that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the [18 U.S.C.] § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence." *Gall*, 552 U.S. at 51. "If procedurally sound, we then review the sentence for substantive reasonableness under an abuse-of-discretion standard." *United States v. Haj-Hamed*, 549 F.3d 1020, 1024 (6th Cir. 2008) (citing *Gall*, 552 U.S. at 51).

#### B. Procedural and Substantive Reasonableness

Turner argues that the district court failed to consider all the § 3553(a) factors and his mental health issues, and that Turner's sentence is therefore procedurally and substantively unreasonable. We disagree.

### 1. Procedural Reasonableness

We do not require "a mechanical recitation of the § 3553(a) factors, but rather [a district court] must provide an explanation of why, based on the totality of the circumstances, it chose the sentence that it did." *United States v. Rossi*, 422 F. App'x 425, 437 (6th Cir. 2011) (quoting *United States v. Stewart*, 628 F.3d 246, 260–61 (6th Cir. 2010)). "The sentencing judge should set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority." *Rita v. United States*, 551 U.S. 338, 356 (2007). But "when a judge decides simply to apply the Guidelines to a particular case, doing so will not necessarily require lengthy explanation." *Id.* at 356–57. Moreover, we have chosen to conclude that a sentence within the Guidelines range is presumptively reasonable. *United States v. Vonner*, 516 F.3d 382, 389–90 (6th Cir. 2008) (en banc). And, if the district court considered the relevant § 3553(a) factors, how a district court balances those factors to reach the sentence is "beyond the scope" of our review—provided that the sentence is substantively reasonable. *See United States v. Ely*, 468 F.3d 399, 404 (6th Cir. 2006); *see also United States v. Sexton*, 512 F.3d 326, 332 (6th Cir. 2008) (same).

At resentencing, the district court noted that the parties' arguments were the same as at the first sentencing, and stated that "the reasoning [the judge] articulated the first time still applies." R. 60 (Resentencing Tr. at 14–15) (Page ID #500–01). We will thus consider the relevant reasoning from both sentencing proceedings. Beginning with the first sentencing, the district court recognized that, "[t]he touchstone of sentencing is 18 U.S.C. 3553(a)," and that the district court was "required to consider everything" about Turner, what occurred in the case, "calculate the

10

advisory [Guidelines] range correctly, and then consider it along with all the other factors" to reach "a sentence that is sufficient but not longer than necessary to meet the statutory purposes of sentencing." R. 43 (First Sent'g Tr. at 19) (Page ID #384). In determining the sentence, the district court stated that it "reviewed the thorough [presentence] report, read all the memoranda, [and] listened carefully to counsel" and to Turner and N.M.'s mother. *Id.* At both sentencings, the district court considered Turner's "horrific upbringing," and the district court recognized that "[n]o human could be unaffected by that kind of upbringing." R. 60 (Resentencing Tr. at 15) (Page ID #501); *see also* R. 43 (First Sent'g Tr. at 20) (Page ID #385). But, balancing Turner's background with the nature of the offense, *see* R. 43 (First Sent'g Tr. at 20) (Page ID #385), and the need to "protect the community," the judge determined "that the [sentence of] 238 months [of imprisonment] was appropriate," R. 60 (Resentencing Tr. at 15) (Page ID #501). Additionally, the district court recognized the 180-month mandatory minimum. *Id.* at 7 (Page ID #493).

We are satisfied that the district court gave sufficient consideration to the § 3553(a) factors to "allow[] for intelligent appellate review." *United States v. Davis*, 458 F.3d 505, 510 (6th Cir. 2006). Given that the sentence was within the Guidelines range and the district court's consideration of the applicable factors, the district court was not required to give a lengthier explanation. Even though the district court might not have cited to the specific statutory subsections, this court has not "required the ritual incantation of the [§ 3553(a)] factors to affirm a sentence." *United States v. Polihonki*, 543 F.3d 318, 324 (6th Cir. 2008) (quoting *United States v. Johnson*, 403 F.3d 813, 816 (6th Cir. 2005)). We therefore conclude that Turner's sentence was procedurally reasonable.

### 2. Substantive Reasonableness

Turner's (and the government's) arguments on procedural and substantive reasonableness seem to blend together. "This blurring may result from the fact that such an error can come in at least two forms: the procedural error of failing actually to consider all the relevant factors, and the substantive error of imposing a sentence that does not fairly reflect those factors." *Kamper*, 748 F.3d at 746 (quoting *United States v. Camacho-Arellano*, 614 F.3d 244, 247 n.1 (6th Cir. 2010)). Indeed, Turner essentially argues that the district court should have given greater weight to his own "history and characteristics," 18 U.S.C. § 3553(a)(1), and less weight to "the nature and circumstances of the offense," *id.*, as well as to the purposes of punishment, *id.* at § 3553(a)(2). As a result, the argument goes, the sentence does not fairly reflect the factors. But as stated, because the district court did consider the applicable § 3553(a) factors, we cannot say that the district court should have balanced them differently. The district court imposed a 238-month sentence that is approximately in the middle of the Guidelines range (210 to 262 months), which reflects the district court's balancing of the heinous nature of this crime and Turner's traumatic upbringing. We cannot say the district court abused its discretion in imposing such a sentence.

## IV. CONCLUSION

For the foregoing reasons, we **AFFIRM** Turner's sentence of 238 months of imprisonment.